TRINITY FIRE INSURANCE COMPANY ET AL. V. KERRVILLE HOTEL COMPANY ET AL.

No. 7187.   Decided March 17, 1937.
Rehearing overruled April 28, 1937.)
(103 S. W., 2d Series, 121.)

312

*William M. Light, L. G. Seeligson, L. M. Patterson, Pfeiffer & Sanders, W. B. Jack Ball,* and *Henry, Bickett & Bickett,* all of San Antonio, *Goggans & Keith, Davidson, Randall & Gray* and *Touchstone, Wight, Gormley & Price,* all of Dallas, and *Coleman Gay,* of Austin, for plaintiff in error.

It was error for the trial court in its charge to the jury, after giving the statutory definition of the term "interest" to add thereto the words "irrespective of the term or name applied to it by the parties," over the objection that such additional instruction was a general charge and a comment on the weight of the evidence, where the witnesses had testified that the charge made for services on a bond issue was a fee or commission for services in handling the bonds. Cicero Lumber Co. v. Denton, 16 S. W. (2d) 932; Liberty Mutual Ins. Co. v. Boggs, 66 S. W. (2d) 787; Peterson v. Grayce Oil Co., 37 S. W. (2d) 367.

Where the deed of trust provides that, upon default, only the principal sum with interest which matured prior thereto may be collected, and said bonds provide that upon default only said bonds together with interest then accrued thereon may be collected, the deed of trust given to secure such bonds is not usurious. Reynolds Mtg. Co. v. Thomas, 124 Texas 570, 81 S. W. (2d) 52; Odell v. Commerce Farm Credit Co., 124 Texas 538, 80 S. W. (2d) 295.

On the proposition that the makers of said bonds are estopped from asserting that they are an usurious contract see Fox v. Dallas Hotel Company, 111 Texas 461, 240 S. W. 517.

*Boyle, Wheeler, Gresham & Terrell* and *H. M. Parker,* all of San Antonio, for defendants in error.

The mere fact that the whole amount of a loan is not paid over to or drawn by the borrower at once, but that some part of it is allowed to remain with the lender, does not render the loan usurious, provided the whole sum is held subject to the borrower's order or demand. Penziner v. West American Finance Co., 24 Pac. (2d) 501; National Bond & Mortg. Corp. v. Mahanay, 124 Texas 544, 80 S. W. (2d) 947; 66 C. J. 211.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a usury suit. It was filed in the district court of Bexar County, Texas, by Kerrville Hotel Company, a Texas corporation, H. M. Harrison, E. G. Walsh, and Jessie G. Burney, independent executrix of the estate of R. L. Burney, deceased, against Trinity Fire Insurance Company, a corporation, and numerous other parties, corporate and private. The basic purpose of the suit is to declare certain bonds originally given by Kerrville Hotel Company et. al. and originally negotiated to J. E. Jarratt Mortgage Company, a private corporation, tainted with usury. The case was submitted to the jury in the trial court on two special issues, and, based on the jury's findings to such issues, judgment was entered, in effect adjudging the above mentioned bonds tainted with usury. On appeal this judgment was affirmed by the Court of Civil Appeals. 91 S. W. (2d) 973. Trinity Fire Insurance Company et al. bring error.

The facts and contracts involved in this litigation are rather complicated, but we will do our best to make such statement of the facts and issues as is necessary to decide the questions of law presented in the application.

As already stated, this suit was filed by the Hotel Company et al. against the above named Fire Insurance Company et al. alleging that a certain loan, which we shall later more fully describe, made by J. E. Jarratt Mortgage Company to the Hotel Company et al. was and is usurious. The petition of the hotel company seeks certain statutory relief from such loan in case it is held to be usurious.

The Fire Insurance Company et al. are the holders of the bonds representing the above loan. We shall not attempt to detail their pleadings. It is enough to say that we treat the pleadings of all parties as sufficient to raise the issues of law we shall later discuss and decide.

The evidence contained in this record establishes the following facts:

Certain citizens of the City of Kerrville were interested in securing the erection of a new and modern hotel for that city. In consummation of this desire these parties made a contract with H. M. Harrison and R. L. Burney whereby Harrison and Burney agreed that they, or a corporation to be formed by them, would build such hotel. In this contract it was agreed that construction of the hotel would begin in six months from the date of the contract. It was also agreed that Harrison and Burney were to receive as a bonus for building such hotel a lot in Kerrville valued at $60,000.00, on which the hotel was to be built, and $10,000.00 in money. In case such hotel was

not started within six months from the date of this contract the promoters were not to get the lot or the $10,000.00 bonus money, but on the contrary were to pay to the Kerrville citizens a sum of $10,000.00 as liquidated damages.

It appears that Harrison and Burney then approached J. E. Jarratt Mortgage Company, a corporation, of San Antonio, Texas, and sought a loan to construct the above hotel. We will not attempt to detail all the negotiations leading up to the loan as actually made. It is sufficient to say that such negotiations culminated in the following written contract:

"J. E. JARRATT MORTGAGE COMPANY
"Associate Company—J. E. Jarratt Company
"San Antonio, Texas

"June 11th, 1926.

"J. E. Jarratt,
          President
"Geo. G. Murray,
          Vice-Pres. and Manager
"H. K. Trammel,
          Secretary

"Messrs. Walsh, Burney & Harrison
" (Kerrville Hotel Company)
"City

"Gentlemen:
"In reference to your application dated June 11th for a loan of $120,000.00 and to be secured by certain property set out in the application, and which money asked for is to be used in the construction of a modern five story hotel to contain eighty rooms and to be completed in accord with plans and specifications to be placed on file in our office prepared by P. G. Silber:
"We beg to advise that subject to approval of title and plans and specifications, contract for construction and the leases impending, the loan is acceptable to us as follows:
"The loan is to be for $120,000.00, 7% interest payable semi-annually, and the principal repayable as follows:

          "$6500.00 on August 1st, 1928
          "$6500.00 on August 1st, 1929
          "$7500.00 on August 1st, 1930
          "$7500.00 on August 1st, 1931
          "$7500.00 on August 1st, 1932
          "$7500.00 on August 1st, 1933
          "$8500.00 on August 1st, 1934

"$8500.00 on August 1st, 1935
"$60000.00 on August 1st, 1936.

"The loan is to be effective as of August 1st, 1926, and beginning with April 1st, 1927, equal monthly deposits are to be made the first of each month by the Kerrville Hotel Company with the J. E. Jarratt Mortgage Company in sufficient amounts to take care of the amortization and interest each year up to, but not including, the principal amount due the tenth year. The J. E. Jarratt Mortgage Company is to allow 3% interest on such deposits and will apply the amounts so deposited to maturing items under this loan.

"Since this loan is effective as of August 1st, 1926, and the full amount of the loan will not be disbursed at that time, we agree to allow 3% interest on funds remaining in the hands of the J. E. Jarratt Mortgage Company during construction of the building.

"Fire insurance in the amount of not less than $120,000 and tornado insurance in the amount of $100,000 are to be carried in companies acceptable to the J. E. Jarratt Mortgage Company in favor of the loan.

"Since it is estimated that the building will cost $200,000, the Kerrville Hotel Company agrees to place in this building all funds necessary to the completion of the building over and above the amount of the loan herein provided for before any funds will be drawn under this loan. After this is done and proper evidence furnished to such action, we agree to make advances up to eighty-five per cent of the cost of the labor and material as certified to by the supervising architect, but not to exceed eighty-five per cent of the amount of the loan until the building is finally completed. When the building is finally completed and satisfactory evidence is furnished that all bills for labor and material are paid, the additional fifteen per cent of the loan is to be disbursed.

"It is further understood and agreed that since the proposed tenants are under a $50,000 bond to fully equip and furnish the hotel with equipment and furniture not inferior to that of the Robert E. Lee Hotel in Laredo, Texas, and after such furniture and equipment is placed in the hotel it is to be pledged as security for the faithful performance of the lease contract. It is further provided herein that this lease is to be assigned as additional collateral to the loan herein provided for, and since this is the case proper papers are to be prepared conveying all of the rights under the lease to the J. E. Jarratt Mortgage Company or its assigns, as additional collateral to the loan herein provided for.

"This commitment is made on the basis of a lease contract of 25 years signed by F. E. Wallace and Floyd Singleton and with the further agreement that the J. E. Jarratt Mortgage Company reserves the right to approve said lease in so far as the validity of the lease is concerned and also subject to a check as to the moral and financial standing of the lessees as well as their ability to conduct a first class hotel.

"It is a further condition of this loan that a construction bond satisfactory to the J. E. Jarratt Mortgage Company by one of the leading surety companies will be provided guaranteeing the completion of the improvements in accord with the plans and specifications by April 1st, 1927.

"While it is agreed herein that the lease to Floyd Singleton and F. E. Wallace is to be assigned to us as additional collateral we hereby agree that no collections will be made by the holder of the notes under this lease unless the loan is in default.

"In addition to the signature of the Kerrville Hotel Company (to be incorporated with R. L. Burney, E. G. Walsh and H. N. Harrison as stockholders with a capital stock of $140,-000 of which $70,000 is represented by common stock fully paid, and $70,000 preferred stock paid in in full) R. L. Burney, E. G. Walsh and H. N. Harrison agree to sign all notes and bonds that may be required severally, individually and as co-makers along with the Kerrville Hotel Company.

"In addition to the interest provided for in the application, the borrowers agree to pay J. E. Jarratt Mortgage Company $12,000.00 for handling the loan; said $12,000 to be paid as follows:

"$3600.00 in cash at the time of closing the loan
"$3600.00 on August 2nd, 1927
"$3600.00 on August 2nd, 1928
"$1200.00 on August 2nd, 1929

Said deferred payments to be represented by notes acceptable to the J. E. Jarratt Mortgage Company, but not to provide for interest until after maturity.

"Parties will have the privilege of paying the loan in multiples of $100 or more, on August 1st, 1931, or on any annual interest paying date thereafter by giving sixty days written notice and paying 2% penalty on amount so prepaid. Prepayments made are to be applied in reverse order on maturing bonds or notes.

"We feel that the conditions set out herein will be complied with to our satisfaction and we will ask that you please let us have the abstract in order that we may proceed with the examination of the title, and oblige—

"Very truly yours,
"*(Signature)* GEO. G. MURRAY
GGM-LS                                    Vice President.
"Agreed to this the 11th day of June, 1926.
"*(Signature)* R. L. BURNEY
"*(Signature)* H. M. HARRISON."

The above instrument constitutes a written contract entered into between J. E. Jarratt Mortgage Company on the one hand and R. L. Burney and H. M. Harrison on the other. It will be noted that this contract is dated June 11, 1926.

The above contract by its terms provided for a loan of $120,000.00 to be made by J. E. Jarratt Mortgage Company to a corporation to be chartered as "Kerrville Hotel Company," and to be promoted and incorporated by R. L. Burney, E. G. Walsh, and H. M. Harrison, and these three parties were to sign with the hotel company all notes or bonds given to evidence the $120,000.00 indebtedness.

In compliance with the above contract Burney, Walsh, and Harrison incorporated the Kerrville Hotel Company under the laws of the State of Texas, and on July 31, 1926, the Kerrville Hotel Company executed and delivered to J. E. Jarratt Mortgage Company $120,000.00 in bearer bonds. These bonds mature as in the above contract provided; they bear 7 per cent. interest per annum, payable semiannually; they recite that they are secured by deed of trust executed by the hotel company to J. E. Jarratt Company, a corporate trustee; they contain language which makes the deed of trust and the bonds parts of one and the same contract; and they are signed by the hotel company and by Burney, Walsh, and Harrison. Also, each of such bonds contains the following default maturity clause:

"Should default be made in the payment at maturity of any bond, or interest coupon, of said series, or should default be made in the performance of any of the covenants made by the maker hereof, in the deed of trust above referred to, then the principal of this bond may become and be due and payable before its specified maturity, together with interest then accrued hereon and attorney's fees and interest on past due principal or interest, all as provided for in said deed of trust."

At the same time the above bonds were executed and delivered to J. E. Jarratt Mortgage Company, Kerrville Hotel Company executed and delivered to J. E. Jarratt Company, a corporate trustee, a deed of trust covering properties not necessary to describe here. The pertinent provisions of this deed of trust are fully set out and described in the opinion of the Court of

Civil Appeals, to which we here refer. In the interest of brevity we will not attempt to again set them out here.

At the time said above bonds were executed, and as part of the same transaction, the Kerrville Hotel Company agreed to pay to J. E. Jarratt Mortgage Company $12,000.00 for handling the loan. Thirty-six hundred dollars of this sum was paid in cash, and notes were issued for the deferred payments. These notes were signed by Kerrville Hotel Company and also by Burney, Walsh, and Harrison. We gather that these notes were paid at or about maturity. We refer to the opinion of the Court of Civil Appeals for further description of this transaction and these notes.

Under the record before us it conclusively appears that the contract of June 11, 1926, and the bonds and deed of trust above described constituted one and the same contract. It also appears that the $12,000.00 above mentioned was paid in conformity and in compliance with such June 11, 1926, contract. If this $12,000.00, or $9,600.00 thereof as found by the jury, was paid as interest then this contract was usurious in its inception, unless some of the matters we shall later discuss will lead to a contrary conclusion. This fact has been conclusively demonstrated by the opinion of the Court of Civil Appeals, and no good purpose would be served by its further discussion here.

1  It seems to be contended by the plaintiffs in error that the contract for the payment of the $12,000.00 was a separate and independent transaction, and therefore could not operate to taint this loan with usury. We overrule this contention. The contract of June 11, 1926, specifically provided for the payment of this sum by the borrowers to J. E. Jarratt Mortgage Company "for handling the loan." The bonds and deed of trust were drawn substantially in conformity with the June 11, 1926, contract. The $12,000.00 was paid in compliance therewith. When we come to consider what constitutes the contract in this case we are compelled to the conclusion that all of the instruments we have mentioned above, the contract of June 11, 1926, the bonds, the deed of trust, and the contract with reference to the $12,000.00, constitute the contract just as completely and just as effectively as if they were all comprised within the four corners of one instrument. Farm & Home Savings & Loan Assn. v. Martin, 126 Texas 417, 88 S. W. (2d) 459; Texas Jur., Vol. 42, p. 891, Sec. 12, and authorities there cited.

2, 3  Plaintiffs in error insist that the facts of this record show that J. E. Jarratt Mortgage Company did not loan this money,

but merely acted as agent or broker for the borrowers in underwriting or promoting this loan, and passing it on to the persons and parties who finally purchased the bonds. In this connection it is insisted by the plaintiffs in error that if this record does not show that J. E. Jarratt Mortgage Company was an agent or a broker as a matter of law, it at least raises a fact issue as to that question. In connection with the above contentions plaintiffs in error further advance the proposition that it is no violation of our usury laws for a party to charge a borrower a fee to procure him a loan from a third party, or to promote or underwrite the sale of bonds. We are fully aware of the fact that a borrower may lawfully pay an agent or a broker a fee to procure him a loan from a third party. We are also fully aware of the fact that it is not a violation of our usury laws for an agent or a broker to promote the sale of bonds, such as these, to legitimate investors, and to the general public, and charge the borrower a fee or commission therefor. In spite of this, we are absolutely unable to find any fact or circumstance in this record that would constitute J. E. Jarratt Mortgage Company a promoter, an underwriter, a broker, or an agent for the borrower in this instance, or even raise a fact issue on those questions. On the other hand, the contracts and all surrounding facts completely and absolutely negative such conclusions. The contract of June 11, 1926, bound J. E. Jarratt Mortgage Company itself to make this loan. It does not even by innuendo contain language calculated to show that such mortgage company was to act as a promoter, an underwriter, a broker, or an agent. Of course, it provides for the loan to be evidenced by negotiable instruments in the form of notes or bonds, but it absolutely bound the mortgage company itself to advance the money and take as its own the bonds or notes. In this connection the record conclusively shows that the contract of June 11, 1926, was performed and carried out substantially as made, and that J. E. Jarratt Mortgage Company itself made the loan. It is true that after J. E. Jarratt Mortgage Company made this loan and obtained these bonds it sold them to various and sundry parties, corporate and individual, but it is not shown that the borrowers had any interest in such sales or participated therein in any manner. This record conclusively shows that when the bonds here involved were negotiated and delivered to J. E. Jarratt Company it became the sole and fee simple owner thereof, to do with them as it pleased. The mortgage company rested under no obligations to sell them. Furthermore, the borrowers rested under no obligations to assist the mortgage company to sell them. Such a

record has no earmarks of a brokerage or an agency transaction.

4 Plaintiffs in error contend that the hotel company is not in a position to assert that these bonds, and the contracts incident thereto, are tainted with usury, because it was not the original maker of the contract of June 11, 1926, but is simply in the position of one who has assumed the same. We overrule this contention. The record shows that the contract of June 11, 1926, was made in contemplation of the incorporation of Kerrville Hotel Company. It also shows that such contract was made in its name and for and on its behalf. The record further shows that after Kerrville Hotel Company was incorporated it, as was contemplated, in all things ratified, adopted, and carried out such contract. All parties knew and understood that the June 11, 1926, contract was to be carried out by the hotel company, when incorporated, as principal. Under such a record, even though the contract of June 11, 1926, did not bind the corporation when it was made, still when it subsequently adopted and ratified same, after it was chartered, it made such contract in all respects what it would have been if the requisite corporate power had existed when it was entered into. Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050; 10 Tex. Jur., pp. 604-5, Sec. 14; The Bonham Cotton Press v. McKeller, 86 Texas 694, 26 S. W. 1056; Breckenridge City Club v. Hardin, (Civ. App.) 253 S. W. 873; Dealers' Granite Corp. v. Faubion, (Civ. App.) 18 S. W. (2d) 737; Phil H. Pierce Co. v. Rude, (Civ. App.) 291 S. W. 974; Hart-Toole Furniture Co. v. Shahan, (Civ. App.) 220 S. W. 181.

5 Plaintiffs in error contend that the hotel company can not assert usury as against these bonds because they are innocent holders thereof. Our statutes, in substance, provide that all written contracts whatsoever which in any way, directly or indirectly, provide for a greater rate of interest than 10 per cent. per annum shall be void and of no effect for the amount or value of the interest only, etc. As we understand this record, interest only is involved. Such being the case, these bonds as to interest, if usurious, gathered no validity by passing into the hands of innocent holders. Article 5071, R. C. S. of Texas, 1925; Gilder v. Hearne, 79 Texas 120, 14 S. W. 1031; Dallas Trust & Savings Bank v. Brashear, (Com. App.) 65 S. W. (2d) 288.

6 It appears that this case was submitted to a jury in the district court on two special issues, and in response to such issues the jury found:

1. That some part of the $12,000.00 paid to J. E. Jarratt Mortgage Company "for handling the loan" was paid as interest.

2. That $9,600.00 of such $12,000.00 was paid as interest.

In submitting the above mentioned issues to the jury the trial court, in its charge, gave the following definition of interest:

" 'Interest' as used herein means the compensation fixed by the parties to a contract for the use or forbearance or detention of money irrespective of the term or name applied to it by the parties."

It will be noted that the above definition is in substance the definition prescribed by Article 5069, R. C. S., 1925, with the clause, "irrespective of the term or name applied to it by the parties," added. Plaintiffs in error contend that such added clause constituted reversible error for various reasons not necessary to mention here. We overrule this contention. It is true that ordinarily where the statute defines a legal term the court should confine his charge to the statutory definition. However, in this instance Article 5071, R. C. S., 1925, is also involved in the definition. This last mentioned Article provides, in effect, that all written contracts which may, directly or indirectly, provide for a greater rate of interest than 10 per cent. per annum shall be void as to interest only, etc. In the present instance the bonds on their faces bore only 7 per cent. interest. The usury, if any, was concealed in a transaction that was not disclosed by such bonds or the deed of trust securing them. A simple definition in the language of Article 5069 might have misled the jury and denied the hotel company et al. the rights accorded to them by the law as defined by Article 5071. In this connection, had the definition of interest as prescribed by Article 5069 alone been given, the jury might not have understood that interest indirectly charged or interest concealed was still interest in law. We especially call attention to the fact that the contract of June 11, 1926, simply says that this $12,-000.00 is paid "for handling the loan." It does not call it interest.

There are certain assignments contained in the application relating to improper arguments to the jury indulged in by counsel for the hotel company et al. The bills of exception relating to these matters, including the qualifications of the trial court, which contain lengthy extracts from arguments made by counsel for plaintiffs in error, are fully set out in the transcript and comprise many pages thereof. In fact, these

matters are too long to detail in this opinion. It is sufficient to say that such bills, when considered in the light of the trial court's qualifications, present no reversible error.

It will be noted that the contract of June 11, 1926, provides for the payment of $12,000.00 "for handling the loan." We have carefully examined the record and the evidence regarding the circumstances and purposes of this charge, and it would extend this opinion many pages to recount such evidence. We will simply say that plaintiffs in error certainly obtained all the rights they could possibly be entitled to when the jury was permitted to find on the issues above indicated.

7   Plaintiffs in error contend that Kerrville Hotel Company et al. are estopped from pleading usury against these bonds because they assisted J. E. Jarratt Mortgage Company and J. E. Jarratt Company, its selling agent, either or both, in selling such bonds to plaintiffs in error, or their predecessors, subsequent to their negotiation to J. E. Jarratt Mortgage Company. We have carefully examined the record, and are unable to find any evidence showing, or tending to show, that the hotel company et al. participated in any way in the sale of these bonds by J. E. Jarratt Mortgage Company or the J. E. Jarratt Company.

Plaintiffs in error contend that the hotel company et al. are estopped from pleading usury against these bonds on account of certain statements made in the bonds themselves and in the deed of trust securing the same. The assignment of error in regard to this matter reads as follows:

"The Plaintiffs having, in substance, affirmatively represented in the Bonds and/or Deed of Trust securing their payment that they constituted the sole and only contract between the parties with reference to the indebtedness thereby evidenced and secured and that said Bonds and Coupons were valid and binding obligations according to their terms, they are estopped from later asserting as against innocent holders of said Bonds that interest in addition to that shown in those instruments was by contract of the parties intentionally charged and/or paid thereon in a sufficient amount to constitute usury."

If we correctly interpret the above assignment and the arguments thereunder, they amount to a contention that these bonds and the deed of trust securing same affirmatively assert or state that they constitute the sole and only contract between the parties; that the usury in this transaction, if any, was paid in compliance with the contract of June 11, 1926, and the notes executed thereunder; that such contract of June 11, 1926,

and notes were not mentioned in these bonds or the deed of trust, and were unknown to the plaintiffs in error when they purchased such bonds; that no taint of usury appears on the face of the bonds or the deed of trust securing the same; that the fact that the bonds and deed of trust securing same disclosed no usury, but affirmatively state that they constitute the sole and only contract between the parties amounted, in law, to an affirmative statement by the hotel company et al. that no usury tainted such bonds; and that all such circumstances, in law, estopped the hotel company et al. from asserting that these bonds are usurious, even if they are.

**8** Our usury statutes undoubtedly express the public policy of this State. They, in plain and unambiguous language, make all written contracts which may in any way, directly or indirectly, provide for a greater rate of interest than 10 per cent. per annum usurious, void, and of no effect for the amount of the interest charged. This provision, as already shown, applies to innocent purchasers as well as to original lenders. Simply stated, to sustain the above assignment would be to hold that a lender may charge a borrower usury in any amount, then in the very instrument supposed to evidence the transaction exact from such borrower a statement that no usury has been charged, or a statement to that legal effect, and thereby work an estoppel against the borrower from pleading usury by passing the instrument into the channels of trade. We think to merely state the proposition is to demonstrate that to sustain it would virtually destroy the usefulness of our usury laws, and circumvent the public policy of the State as therein expressed.

Further discussing the above question, we wish to say that we are fully aware that it is the rule that a borrower may be estopped from pleading usury against an innocent purchaser of a usurious instrument by acts which he, the borrower, may commit subsequent to the consummation of the usurious transaction, but, after diligent search, we have found no authority, and have been cited to none by the plaintiffs in error, which would sustain the proposition that estoppel against pleading usury may be worked by merely stating in the original instrument itself, which does not disclose the usury, that it constitutes the sole and only contract between the parties, or even by directly stating in such instrument that the contract is free from the taint of usury.

This record, like many others which this Court has to consider, is very voluminous. The application for the writ contains 330 pages of printed matter and cites numerous authorities.

The other briefs and written arguments filed by counsel on both sides are also very voluminous. The transcript contains 394 pages and the statement of facts 424 pages, not counting numerous attached exhibits. We mention these matters to demonstrate the task imposed upon this Court in passing on records of this size. We have attempted to discuss the important and controlling questions of law involved. We have also carefully considered all assignments presented by the application. In our opinion no reversible error is presented by this record. The judgments of the district court and of the Court of Civil Appeals are both affirmed.

Opinion delivered March 17, 1937.

Rehearing overruled April 28, 1937.