### GREEVER v. PERSKY.

No. 14295.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 14, 1941.

Rehearing Denied Dec. 12, 1941.

Ray Bland, John C. Kay, and Kilgore & Rogers, all of Wichita Falls, for appellant.

J. R. Wilson, of Wichita Falls, for appellee.

McDONALD, Chief Justice.

This suit seeks a recovery for the alleged payment of usurious interest. The suit is brought by Goldie Persky, as guardian of I. B. Persky, a person of unsound mind.

In 1936, I. B. Persky was a dealer in oil field equipment. Defendant Greever was in the insurance business. Both lived in Wichita Falls and had known each other for a long time. Greever, the only witness testifying in the case, testified in substance as follows:

Persky approached Greever in the latter part of 1936, stating that he was doing a large volume of business, that he had exhausted his credit at the banks, and that he needed to borrow $15,000. Greever had never been in the business of loaning money and did not have that amount of money on hand, and so advised Persky. Persky replied that Greever had the means of obtaining money, and that if he would obtain $15,000 for Persky, the latter would pay Greever a commission of three per cent per month for obtaining for him a loan for ninety days. Greever borrowed $10,000 from one bank, and $5,000 from another, putting up certain securities which he owned as collateral. Greever gave his own notes to the banks, and did not say anything to the banks about borrowing the money for Persky. Greever put the money into his general business checking account. He gave Persky a check for $5,000 on October 31st, 1936, another check for $5,000 on November 4th, 1936, and another check for

568

$5,000 on January 6th, 1937. Upon each occasion Persky gave Greever a note for such amount, payable to Greever in 30 days, and providing for interest after maturity. From time to time after that Persky would make payments to Greever as notes became due, or would renew notes, and from time to time Greever would advance him other amounts. Persky gave Greever two mortgages for the purpose of assigning to Greever certain accounts receivable held by Persky, as security for the payment of these notes. After allowing credit for all payments made by Persky over and above the payments made as "commissions", there remained at the time of the trial an unpaid principal balance of $5,358.01 owing by Persky to Greever on the last two of the renewal notes. Persky paid to Greever a total of $6,945 from November 2nd, 1936, until July 29th, 1938, for the services of the latter in obtaining from the banks the $15,000 in the manner outlined above. Such, in substance, is Greever's testimony.

Briefly stated, it is plaintiff's view that the $6,945 was paid as interest on loans made by Greever to Persky, and it is defendant's view that the $6,945 was paid to him as commissions for lending his credit to Persky and obtaining for him the loans from the banks. It appears to be agreed that none of the $6,945 was intended by either of the parties to be applied on the principal of the notes given by Persky to Greever. If the $6,945 was paid as interest, it greatly exceeded ten per cent per annum.

The effect of the answers of the jury to special issues is that the sums advanced by Greever to Persky were loans, but that the $6,945 was neither paid nor received as interest, and that the intention of both Persky and Greever was that the $6,945 was paid as "compensation for B. B. Greever's services in procuring from the bank upon his own credit, or his own securities, the money which he advanced to I. B. Persky."

Upon motion, the court rendered judgment non obstante veredicto, finding as a matter of law that the transactions were usurious loans, and that the $6,945 was paid as interest. Finding that $2,600 was paid more than two years before the filing of the suit, the court applied that to the payment of principal, leaving a balance of $2,758.01 owing on the principal. Recovery was allowed for double the amount of $4,345 paid within two years of the filing of the suit, which, after off-setting the $2,758.01 just mentioned, resulted in a judgment for $5,-931.97 in favor of plaintiff, from which defendant has appealed.

Appellant Greever's brief presents eleven points upon which he predicates his appeal. We shall discuss them in order.

■ The first four points relate to his contentions that the undisputed evidence, or at least enough to support the jury verdict, shows that the $6,945 was paid as commissions for Greever's services in procuring money for Persky, and not as interest. Appellant relies particularly upon McDaniel v. Orr, Tex.Com.App., 30 S.W.2d 489, arguing that in the present case the question of whether Greever received the $6,945 as interest or as commissions for services was one of fact for the jury, and that the court is controlled by the findings of the jury. The chief distinction between the facts in McDaniel v. Orr and in the case on appeal is, to our minds, this: In the former, the lender claimed to have rendered some personal services which were not a part of the loan transaction itself, while such is not true in the case on appeal. The question in the Orr case was whether the sum of $250 was paid for those personal services not directly connected with the loan, or as interest on the loan. The question in the case on appeal is whether Greever himself made the loan, or whether he acted as a broker or intermediary in obtaining the loan from someone else. Appellant urges us to look through the form of the transactions to determine whether usury is to be found. He argues that he was not in the business of loaning money, that he was in fact acting for Persky in obtaining the money from the banks, and that what he really did was to sell his credit to Persky. To us the facts seem plain. Persky wanted to borrow some money from Greever. Greever said that he did not have the money to loan. Persky pointed out that Greever had collateral upon which he could obtain the money. Greever borrowed money from two banks, put it into his general funds, and from time to time made loans to Persky from his general funds. As Persky made repayments, Greever would put the money into his general funds. There is nothing in the evidence to show that the money borrowed from the banks was set aside for Persky, or that, as some of it was repaid, it was in turn paid over to the banks. The decisions in Sayles v. Jackson, Tex.Civ.App., 254 S.W. 218, writ of error refused, and Trinity Fire Ins. Co. v. Kerrville Hotel Co., 129 Tex. 310, 103 S.W.2d 121, 110 A.L.R. 442, appear to

us to be directly in point. See, also, Joy v. Provident Loan Society, Tex.Civ.App., 37 S.W.2d 254; Deming Inv. Co. v. Giddens, Tex.Civ.App., 41 S.W.2d 260; Ferguson v. Martin, Tex.Civ.App., 70 S.W.2d 804.

■ Special Issue No. 1 inquired whether the moneys advanced by Greever to Persky constituted loans. Appellant's fifth, sixth and seventh points relate to the submission of this issue and to the definition of the word loan contained in the charge. In our opinion the evidence shows without dispute that these transactions were loans by Greever to Persky. Certainly the banks did not loan the money to Persky. Greever was not Persky's agent. The money was not a gift to Persky. Undoubtedly the parties intended that it was to be repaid to Greever. Notes were given for it, and mortgages given to secure the notes. Greever's stated conclusions that the transactions were not loans could not alter the undisputed facts of the case. The jury having made the only finding justified by the evidence, there can be no reversible error in the manner of the submission of the issue or in the accompanying instruction.

■■ Plaintiff's original petition alleges that the total interest paid within two years of the filing of the suit amounted to $4,345. Upon the trial it was discovered that a check dated October 2nd, 1937, for $150, was omitted from the list of checks set out in the petition, although it was included in the total of $4,345, whereupon plaintiff, with leave of the court, filed a trial amendment covering such omitted check. This trial amendment was filed February 14th, 1941. Appellant urges that limitations, as to this particular check, must be computed with reference to the time of filing the trial amendment, and that therefore a recovery of penalty based upon that check is barred. The trial court allowed recovery of penalty in double the amount of $4,345. Plaintiff having undertaken to plead specifically the several interest checks, her specific allegations must control over an erroneous total. The only pleadings seeking a recovery on the check dated October 2nd, 1937, are those contained in the trial amendment, which was filed more than two years after the check was given. The trial amendment apparently does not seek to have the check in question applied to the unpaid principal balance, but only seeks a recovery thereon of the statutory penalty. Under the pleadings a recovery could not be allowed on this particular check.

The point which has given us the most concern is that relating to the refusal of the court to submit defendant's requested issues Nos. 214 and 217, and which inquire, in effect, whether there was any agreement to pay Greever any amounts other than the interest provided for in the notes, after the first ninety days. While No. 217 may be duplicitous, it seems to us that defendant was entitled to have this inquiry submitted to the jury.

■■ There is no liability for the usury penalty in the absence of an agreement to pay usurious interest. Palmetto Lumber Co. v. Gibbs, 124 Tex. 615, 80 S.W.2d 742, 82 S.W.2d 376, 102 A.L.R. 474, 482; 42 Tex. Jur. 896. Throughout his testimony Greever vehemently declared that the only agreement ever had between him and Persky with reference to the payment of what he called commissions, was the original agreement to pay three per cent per month for ninety days. While to us it seems highly improbable that Persky would have paid Greever more than $6,000, either as commissions or interest, without any agreement concerning it, yet in view of our traditional policy of submitting to the jury every requested issue concerning facts about which reasonable minds could differ, we are not prepared to say that there was no evidence upon which the jury could have found favorably to defendant on this question.

■ By plea in abatement defendant questioned the right of plaintiff to sue as guardian, endeavoring to show that there had been no proper adjudication of Persky as a person of unsound mind. We overrule the contention under authority of Bearden v. Texas Co., Tex.Com.App., 60 S.W.2d 1031.

■ By his eleventh point appellant seeks to invoke what he terms the doctrine of clean hands, on the ground that Persky misrepresented his financial worth when he obtained the loans from Greever. No authority is cited in support of the proposition. This not being an equitable proceeding, we are not able to see the applicability of the argument.

The judgment of the trial court is reversed, and the cause is remanded for another trial not inconsistent with the rulings announced in this opinion.