## NATIONAL BOND & INVESTMENT CO. v. ATKINSON.
### No. 6262.

Court of Civil Appeals of Texas. Amarillo.
Nov. 24, 1952.

Rehearing Denied Dec. 22, 1952.

Burt Barr and J. Lee Zumwalt, Dallas, for appellant.

Brundidge, Fountain, Elliott & Bateman, Dallas, for appellee.

LUMPKIN, Justice.

This is a usury case. On October 8, 1951, the appellee, Earl G. Atkinson, purchased a second-hand automobile from a Dallas second-hand car dealer known as "Goss on Ross, Tradin' Hoss." In the course of the transaction, the appellee executed his note for the principal sum of $868.50, payable to the dealer. It was later discounted by Goss on Ross to the appellant, National Bond & Investment Company. This action was brought by the appellee against the appellant for the cancellation of the note, mortgage and other instruments which were executed in connection with the sale of the automobile. The appellee also asked that the court order the appellant to turn over to him the certificate of title to the car.

At the time of the purchase the appellee and one C. L. Graves, salesman for Goss on Ross, executed a statement of transactions, which was made in connection with and as part of a contract of conditional sale entered into between the appellee and the car dealer. The statement of transactions provides in part as follows:

| "Selling Price of Vehicle | $895.00 |
|---|---|
| Purchaser's 1% Tax | 9.85 |
| Title, Transfer and Notary Fees | 2.00 |
| Bona Fide Cash Delivered Price | $906.85 |
| Down Payment—Cash | 304.00 |
| Unpaid Cash Balance | $602.85 |
| Time Price Differential Incl. Ins. Premiums for | 265.65 |
| Contract Balance | $868.50" |

The instrument further provides for the payment of 18 monthly installments of $48.25 each, beginning on November 10, 1951.

The appellee alleged—and later proved—that Graves had told him that the price of the car was $895; that he and his wife agreed to pay $304 in cash and the balance within a few days; that at Graves' instigation, appellee signed some blank forms which were to be filled out later, among them the statement of transactions and a note. Later, when he received a certificate of insurance through the mail, he found that it named the appellant, National Bond & Investment Company, as the loss payee; this was the first he knew that Graves was representing the appellant in making out the papers. The appellee pleaded that he was advised by the appellant that the insurance premium was $79.20; and that $186.45 was for interest and carrying charges. He also pleaded that the statement of transactions shows on its face that the sum of $186.45 was charged the appellee as interest or carrying charges on an installment contract to run 18 months; that this amount exceeds 10% per annum, the lawful rate of interest; that the contract and note are usurious—a fact which was known to the appellant and its agents when the note was purchased. The appellee pleaded that on November 15, 1951, he had tendered the appellant the amount of $697.05—the unpaid balance of $602.85, plus the insurance premium of $79.20, plus a reasonable interest of $15—but that the appellant refused to accept this amount and demanded payment of the full amount.

As a defense the appellant pleaded that it held the note as an innocent purchaser for value in due course, before maturity and without notice of any defect; that the appellee had purchased the automobile at a credit or time price rather than at a cash price. In a cross-action, the appellant sought to foreclose its lien and recover the full amount of the note.

After a trial before the County Court of Dallas County without a jury, a judgment was rendered cancelling the note and chattel mortgage in so far as they provided for the recovery of the sum of $186.45, this being a sum in excess of the maximum rate of interest allowed by law. The court ordered that the tendered sum of $697.05 be paid to the appellant and that the appellant release to the appellee the certificate of title to the automobile, free and clear of the lien theretofore claimed by it. From this judgment, the appellant perfected its appeal to the Fifth Court of Civil Appeals,

whence the appeal was transferred to this court by order of the Supreme Court of Texas.

■ The first question we must determine is whether the $186.45 represents the difference between a cash selling price or a time selling price or whether this amount was demanded as interest on the deferred balance of the purchase price. The courts of this state have recognized that a seller may have a cash price for his commodities, that he may have a different and higher time credit price for the same commodity, and that this difference in prices does not constitute interest for the forbearance, use or detention of money or credit. Article 5074a, Vernon's Annotated Civil Statutes; Standard Supply & Hardware Co. Inc., v. Christian-Carpenter Drilling Co., Tex.Civ. App., 183 S.W.2d 657, writ ref.; Associates Inv. Co. v. Thomas, Tex.Civ.App., 210 S. W.2d 413.

In this case the appellee testified that Graves had told him the price of the car was $895, that nothing had been said about a time credit price or the financing of the car, that he had made a down payment of $304, and that he had paid the State tax of $9.85 and an insurance premium of $79.20. He said that he had signed the statement of transactions and the note, neither of which had been filled out. Graves admitted he had sold the appellee the car for $895— the only price he had named. He also said that the "Time Price Differential" on the statement of transactions in the amount of $265.65 was a charge for insurance and carrying charges. He said that he had filled in these figures; that the printed form notes had been supplied by the appellant; and that he had arrived at the figure of $186.45 from a rate schedule book or chart furnished by the appellant; and that this figure, plus the unpaid balance, $602.85, plus the insurance premium, $79.20, amounts to $868.50, the amount of the note. Mr. Joe Lewis, appellant's president, stated that it was customary for loan companies to furnish printed forms of contracts and notes to automobile dealers with charts showing how much should be added to the sales price when a note was to be given for a deferred balance of the sales price of the car.

■ The trial court found the amount of $186.45 to be usurious. On appeal express findings and findings implied from the nature of the judgment rendered will not be disturbed where there is some evidence to support them. In our opinion the evidence supports the conclusion that Goss on Ross sold the automobile to the appellee for $895, that the unpaid balance was $602.85 and that, in accordance with the terms of the conditional sale contract, the appellee was to be charged for "Time Price Differential Incl. Ins. Premiums for $265.65." Of this sum, $79.20 is admittedly for insurance and the remainder, $186.45 is obviously for usurious interest despite the fact that it is not designated as interest in the statement of transactions or in the note. In the case of Associates Inv. Co. v. Thomas, Tex.Civ.App., 210 S.W.2d 413, 416, the court said:

"Parties often undertake to conceal usury by writing a contract differing from the real agreement of the parties, but the courts will inquire to ascertain the actual agreement, and will declare the agreement usurious if it requires the payment of usurious interest, even if it is given another name in the contract."

Associates Inv. Co. v. Ligon, Tex.Civ.App., 209 S.W.2d 218; Associates Inv. Co. v. Hill, Tex.Civ.App., 221 S.W.2d 365; G.F.C. Corporation v. Williams, Tex.Civ.App., 231 S.W.2d 565; Associates Inv. Co. v. Sosa, Tex.Civ.App., 241 S.W.2d 703.

■ The appellant contends that it is an innocent purchaser of the note and, therefore, is entitled to recover the full amount, even though it was usurious in the hands of the original payee. We cannot agree with this argument for an all sufficient reason. Article 5071, Vernon's Annotated Civil Statutes, provides that all written contracts for a greater rate of interest than 10% per annum shall be void and of no effect for the amount of the interest only. Since usurious interest in the hands of the original payee is void, it logically follows that it continues to be usurious and

void even if the note is in the hands of a bona fide holder. Washer v. Smyer, 109 Tex. 398, 211 S.W. 985, 4 A.L.R. 1320. The rule is thus stated in 42 Tex.Jur., 1000:

"Under the English rule and the Spanish law, by which a contract to secure the payment of usury is absolutely void, a note given for a usurious consideration is void in the hands of an innocent indorsee for a valuable consideration. In Texas also a usurious contract gathers no vitality by its circulation, and is void as to interest in the hands of an innocent holder. It is now settled that there can be no innocent purchaser of a usurious note, either before or after maturity, and it is immaterial that there is nothing on the face of the note or the security to put the transferee on notice."

Therefore the sale of the note and endorsement to appellant before maturity by the car dealer would not relieve the note of usury in the hands of the appellant. Trinity Fire Ins. Co. v. Kerrville Hotel Co., 129 Tex. 310, 103 S.W.2d 121, 110 A.L.R. 442; Associates Inv. Co. v. Hill, supra.

■■ The appellant contends the trial court erred in permitting the appellee to introduce the statement of transactions (a memorandum of the conditional sales contract entered into between the appellee and Goss on Ross); in permitting the appellee to vary the terms of this instrument and the note by parol evidence without pleading fraud, accident or mistake; and in allowing third persons to testify to the circumstances surrounding the sale of the car, a transaction in which the appellant was not a party. The appellee did plead that the car sales transaction was fraudulent. However, in our opinion, the evidence objected to was admissible for the reason stated in the case of State v. Abbott Loan Service, Tex.Civ.App., 195 S.W.2d 416, 419:

"It is a well established rule in this state that, in usury cases as in other cases involving fraud, subterfuge and evasion of the law, that the law is liberal in allowing inquiry into the real truth of the transactions involved since the best evidence of the transaction is in the exclusive possession of the accused and not readily available to the complaining party. This rule was announced in the early case of Peightal v. Cotton States Building Company, 25 Tex.Civ.App. 390, 61 S.W. 428, 431, in which it is held * * * 'that any evidence surrounding and so connected with a transaction as will throw light upon it, and disclose, or tend reasonably to show, its true character, is admissible upon the issue of usury, although the contract is in writing, and appears upon its face fair and legal.' "

In ascertaining the intention of the parties to make a usurious loan, a court may look beyond a written contract; the intent may be disclosed by parol evidence. Griffith v. Gadberry, Tex.Civ.App., 182 S.W.2d 739.

For the reasons given above, we overrule all of the appellant's points of error and affirm the judgment of the trial court.