## DIXIE DISTRIBUTORS et al. v. LANE.
### No. 11991.

Court of Civil Appeals of Texas. Galveston.
May 13, 1948.

Rehearing Denied May 27, 1948.

Al L. Crystal, of Houston, for appellants.

Church & Church and Wm. C. Church, Jr., all of San Antonio, and James C. Boone, of Houston, for appellee.

MONTEITH, Chief Justice.

This action was brought by appellee, O. Lane, for the recovery from Dixie Distributors, a partnership, and Abe K. Fisch and Nathan Clairfield, as partners, deposits made by him on cases of beer bottles, and for damages for the breach of a contract to purchase 7500 cases of beer. Appellants answered by general denial and by a plea in abatement contesting appellee's right of recovery on the ground that the contract sought to be enforced was in violation of Article 666, Section 27(b) and 667, Section 24(j) of Vernon's Penal Code of the State of Texas.

In the trial before the court, judgment was rendered in favor of appellee for the sum of $1552.40. At the request of appellee, the trial court prepared and caused to be filed his findings of fact and conclusions of law.

Appellants, wholesale beer distributors, entered into a written contract to sell appellee, a retail beer dealer, 7500 cases of beer manufactured by Hartig Brewery, to be delivered at the rate of not less than one carload every two months.

As part payment for the beer and as a deposit to insure the return of the empty bottles and cases, appellee paid appellants the sum of $2775.00 at the time of the execution of the contract. Appellants agreed to repay any unused portion of this advance payment. Only one consignment, 1400 cases of beer, was delivered to appellee by appellants.

On September 1, 1945, appellants advised appellee by letter that the contract for the purchase of the beer had been terminated by order of the Texas Liquor Control Board. They enclosed in said letter a check for the sum of $2257.00, claiming it to be the balance due appellee out of the original deposit of $2775.00 after deducting therefrom 37¢ per case for the 1400 cases delivered to appellee on the August 21, 1945, shipment of beer. By letter dated September 5, 1945, appellee wrote appellants, acknowledging receipt of the check for $2257.00. He enclosed freight bill and asked that they advise him where to ship empties and who to draw draft on. By letter dated September 11, 1945, appellants instructed appellee to send empty bottles with sight draft-bill of lading attached, to the Hartig Company, Watertown, Wisconsin. They advised appellee

that they had mailed him check in the amount of $424.19 to cover freight bill on the cases of beer that had been delivered.

Appellants have refused to reimburse appellee for the unused portion of the deposit posted by appellants with the brewery as security for the return of the empty cases and bottles.

This action was brought by appellee under the terms of the contract to purchase the beer for the recovery of $1552.40, alleged to be the unused portion of the deposit for the empty bottles and cases, and for damages alleged to have been sustained by appellee from appellants' failure to deliver to appellee the balance of the 7500 cases of beer under the terms of said contract.

On the trial, appellants offered the testimony of Abe K. Fisch, one of the appellants, who testified, over appellee's objection that it was secondary and hearsay testimony, that a Mr. W. W. Ince, a Supervisor of the Texas Liquor Control Board, had asked to see the contract they had made with their customers regarding the delivery of Hartig's beer and that, at Mr. Ince's suggestion, they had gone to Austin with him. He testified that the Liquor Control Board had ordered appellants to refund the money on the contracts, and that "they wrote down every one of these contracts that we had and made a record of it and sent copies of letters to these customers with their refund and voided their contract". Mr. Fisch testified further that after appellants had written appellee terminating his contract and refunding the $2257.00, he had, on September 19, 1945, sent the following wire to appellee: "Can ship you a carload of beer immediately. If interested please wire us a deposit for $1000.00 and the balance will be shipped sight draft less the $1000.00 deposit", and that appellee had not replied to this telegram.

The trial court found on what we deem to be ample evidence, that appellee could have sold many more than the 7500 cases of beer which had been purchased within the period of the contract if such beer had been delivered to him.

The court further found that no notice of a formal hearing before the Texas Liquor Control Board with regard to the contract under consideration was given appellee, but that, as a result of a conference with this Board, appellants had undertaken to terminate said contract, and that, by mutual agreement, no further deliveries of beer were made to appellee, though appellants had tendered appellee other beer which he had refused to accept. The court found that in the normal operation of his business appellee could have sold the 6100 cases of Hartig beer contracted for, but that, under the record, he was unable to determine the amount of profit he would have made from the sale.

The court concluded, as a matter of law, that it was lawful for appellee to contract for the purchase and sale of beer for future delivery and that the burden to prove the illegality of the contract sued on was on appellants, but that appellants had not discharged that burden.

The portions of Article 666, Section 27(b), Penal Code, material to this appeal read: "It shall be unlawful for any brewer, distiller, winery or manufacturer of any alcoholic beverage * * * or employees thereof, to enter or offer to enter into any agreement, contract, arrangement, condition, or system, either orally or written, with any wholesaler or any other person in this State wherein or whereby any person is required, obligated, persuaded, influenced, or induced, or by the terms of which it is intended * * * or induce any person to purchase * * * any certain volume or quota of business, more or less, of * * * alcoholic beverages, whether the same be within any period of time, or within any area, or upon the fulfillment of any condition * * * to require * * * or induce any person * * * to sell any alcoholic beverage in any manner contrary to law or in any manner calculated to induce a violation of the law * * *."

Article 667, Section 24(j), Penal Code, provides "Exclusive Outlet: To require, by agreement or otherwise, that any retailer engaged in the sale of brewery products shall purchase any such products from such

persons to the exclusion in whole or in part, of the products sold or offered for sale by any other person engaged in the manufacture or distribution of brewery products or to require the retailer to take or dispose of a certain quota of any such product."

It is the settled law in this State that " 'a contract to do a thing which cannot be performed without a violation of the law is void.' * * * but where the illegality does not appear on the face of the contract it will not be held void unless the facts showing its illegality are before the court". Lewis v. Davis, Tex.Sup., 199 S.W.2d 146, 148, and authorities there cited.

Appellants contend that under the terms of the contract involved in this appeal, appellee was required to take a certain quota of beer, and that by reason of this provision of the contract, it violates Articles 666 and 667 of the Penal Code.

While the Texas Courts have not spoken on the facts involved in this appeal except by way of analogy, insofar as we have been able to ascertain it is, we think, apparent that Section 27(b) of said Article 666 was enacted to prohibit the sale or contracting for the sale of alcoholic beverages where a dealer is required to purchase any certain volume of the beverage in any manner contrary to law, or in any way which might be calculated to induce a violation of the law.

Section 24(j) of said Article 667, entitled "Marketing Practices", was apparently enacted to prevent wholesalers of brewery products from requiring retailers engaged in the sale of these products from purchasing from any such wholesaler to the exclusion of the products sold or offered for sale by any other dealer engaged in the distribution of brewery products, or "to require the retailer to take or dispose of a certain quota of any such products". It does not, we think, prohibit a retailer

from purchasing brewery products with the understanding that certain quotas of the purchase shall be delivered at stated times.

By cross-appeal, appellee complains of the alleged error of the trial court in finding that the contract in question was terminated by mutual agreement, and in the court's finding that he was unable to determine the amount of damage, if any, appellee had suffered, for the alleged reason that there was no evidence in the record to support such findings.

While the trial court found that in the normal operation of his business appellee could have sold the 6100 cases of beer which were not shipped under the contract of August 8, 1945, and that if such cases of beer had been shipped he would have made a profit out of their sale, the court also found, on what we deem to be ample evidence, that said contract was terminated by mutual agreement on September 1, 1945, and that the parties thereto were not obligated to each other subsequent to that time. It is to be presumed that the court's finding that the contract was terminated is based on the undisputed evidence that on September 19, 1945, subsequent to the attempted termination of said contract, appellants had tendered appellee a carload of beer.

In a trial of a case without a jury, where there is ample evidence in the record to support the findings of the trial court, such findings have the same force and effect as a verdict of the jury on the facts found, and a reviewing court must affirm the trial court's judgment in the absence of other substantial error. Carpenters & Joiners Union, etc. v. Ritter's Cafe, Tex.Civ.App., 149 S.W.2d 694 (writ of error refused), and authorities there cited.

It follows from these conclusions that the judgment of the trial court must be in all things affirmed.