Gene CONNER, Appellant,

v.

Wayne MAY, Appellee.

No. 11687.

Court of Civil Appeals of Texas.

Austin.

July 16, 1969.

Rehearing Denied Oct. 1, 1969.

Hammett & Hammett, James V. Hammett, Jr., Lampasas, for appellant.

Ashley & Ashley, Carlos C. Ashley, Jr., Llano, for appellee.

O'QUINN, Justice.

This is a contract case. It involves the sale of 222 Angus steer yearlings under a written agreement providing for delivery of the steers three months later.

The principal question is whether the parol evidence rule prevents proof of an oral agreement, made prior to execution of the written contract, as to how the steers were to be fed during the three months prior to delivery.

Appellant Gene Conner as seller and Appellee Wayne May as buyer entered into a written contract, dated January 19, 1967, stated in full:

"Bought approximately 222 Angus Steer yrl for delivery (Mr. Mays option) April 24 to May 1, 1967 with unmerchantables out and 5% cut if needed with 3% shrinkage weighed at John Lee Walker's pens or railroad pens @ 27¼¢. A part payment of $2250.00 will be deducted off total price."

May notified Conner by letter dated April 25 from May's lawyer that he would not accept delivery of the steers and demanded return of the $2250 down payment.

Petinent parts of the letter refusing delivery are set out:

"As you know, you entered into an agreement with Mr. Wayne May of Brownwood, Texas, on or about January 19, 1967, for the sale of approximately 222 angus steer yearlings at 27¼ cents per pound, for delivery at Mr. May's option between April 24, 1967, and May 1, 1967. You agreed with Mr. May that you would burn pear for these cattle and feed them cake or cubes not to exceed three (3) pounds per head per day in order that these cattle would be in ordinary winter condition upon delivery.

"In violation of this agreement, you have had these cattle on full feed for a considerable period of time and they are now in 'fat cattle' condition.

"You are hereby notified that by reason of your breach of contract with Mr. May, Mr. May refuses to accept delivery of these cattle and hereby demands return of * * * [the $2,250] down payment which Mr. May made to you on or about January 19, 1967."

At the trial it was shown that May had sold his written contract with Conner to J. B. Love on January 26, 1967, with the following endorsement on May's copy of the contract: "Wayne May sells to Jack Love this contract for .50¢ per hundred profit." The endorsement made no reference to the oral agreement pertaining to the feeding of the cattle, but May testified he told Love that there was an oral agreement the steers would be on pear, cake and hay.

After inspecting the cattle in April, Love declined to take delivery from May, following which May advised Conner as shown by the letter of April 25 set out above.

The trial court, over timely objections made by Conner, permitted May to introduce parol evidence of an oral agreement as to feed of the cattle. Issues were submitted to the jury, and the jury found that Conner and May had "agreed that the cattle * * * would be fed only pear, hay, and cake or cubes, from January 19, 1967, until the date of delivery of said cattle," and that Conner fed the cattle "* * * a ration substantially different from that agreed upon * * *"

The jury also found that May and Conner at the time of signing the contract had not "intended the written instrument dated January 19, 1967, to be the complete and exclusive statement of the terms of their agreement for the sale and purchase of the cattle * * *"

Based on findings of the jury, the trial court entered judgment awarding May recovery of the $2,250 down payment and $300 for loss of profit on the cattle.

Appellant Conner brings seventeen points of error. In addition to the points concerning application of the parol evidence rule in various aspects, appellant urges that recovery on the oral agreement is barred under the statute of frauds and challenges May's justiciable interest in the subject matter of the suit.

We affirm the judgment of the trial court.

It is undisputed that whatever agreement Conner and May had regarding feeding the cattle was made prior to execution of the written contract. May testified that Conner was to "* * * burn pear for them until his grass came along, let them run on the grass, give them cake with the grass if they wanted it * * * but they were strictly supposed to be on cake or cubes and burned pear through the time when there wasn't any grass for them to eat."

May further testified. "Also, I mentioned the filling deal, I said some time during the trade, right up at the last of it, I said 'That little old creek is down there and those cattle could just be terribly full,' I said, 'Gene, you won't go put a bunch of salt out before the delivery, or some time, so they'll just be terribly full?' He said, 'No, I sure won't.' I said, 'Well, I know you won't if you tell me so.'"

No claim was made that Conner filled the cattle by putting out salt and meal. Conner testified that he and May talked about salt and meal, and said that May was not concerned about feeding the cattle but did say, "* * * just don't salt and meal them on me seven days prior to delivery." Conner denied there was any agreement about feeding the cattle and testified he told May in January that later he planned to increase feed for the cattle, which Conner did beginning about 37 days prior to delivery.

May testified that the method of feeding the cattle and their condition was very important to him in terms of "dollars and cents," and that it was as important as any other term of the contract. When the written contract was prepared at Conner's office, May testified that Conner handed it to him and said, "Look this over." After looking it over, May testified that he said to Conner, "Gene, everything is here now except the feeding trade, that they are not supposed to be fed—I want them fed on the ground, and however you want to put it out down there, or if you want to pour this cake out—not a lot of it, I wouldn't say." May added to Conner, "You didn't put that in here, in this contract."

Conner's response, May testified, was, "Well, you know I told you I'm not going to feed them, and I won't."

"Well, actually, then," May said he replied, "all this will be will be a memorandum then, in case one of us gets killed, that our folks can settle it. You've got the meat of the deal, as he [Conner] said, the date to get them and the price per pound and the shrink, and I said, 'I know you won't feed them if you say you won't.' He said, 'I won't.' I said, 'Here's the money and I'm gone.'"

It is uncontradicted that at the time May inspected the steers in January, prior to preparation and execution of the writing at Conner's produce store, the steers were not on full feed, as they were for about five weeks prior to the delivery period.

Henry Dufner testified that he was employed by Conner in January, 1967, and was present at the store when May and Conner closed their trade on the steers. Dufner testified he heard May ask Conner, "Are you going to leave them on feed like they are?" Dufner was not certain of Conner's reply.

Calvin Bush testified he accompanied Conner and May to the place near Rough Creek where the steers were viewed in January, 1967, before the contract was made at the store. Bush said Conner told May the steers at that time were being fed on "protein blocks and hay and burning pear," and that he "was going to continue that, and later on he was going to feed them two or three pounds of cake a day."

Bush went to Conner's store with Conner and May and was present when there was a conversation "regarding the manner in which these steers were to be fed." Bush stated, "* * * Gene [Conner] fixed the contract and Wayne [May] said, 'Gene, you didn't put anything down there about the feed.' He says, 'No,' but he said, 'We have already agreed on the feed deal; no use putting it in there. I'm going to feed like I told you.'"

Conner testified that "* * * if there would have been anything pertaining to the steers, how they were to be fed, and any agreements made, I'd have put it in the contract." When asked how he came to write the contract he and May signed at the store, Conner testified, "Well, that just covered the meat of the contract."

May pleaded that the contract with Conner for the purchase of the steers was "partly oral and partly written." It is recognized that a contract may be partly oral and partly written, but parol evidence of the oral part of the contract must be consistent with the written instrument and not contradictory. Miller v. Vaughn and Taylor Construction Company, 345 S.W.2d 852

(Tex.Civ.App., Fort Worth, 1961, writ ref. n. r. e.); Morrow v. Chicago Trading Corporation, 435 S.W.2d 301 (Tex.Civ.App., Dallas, 1968, writ ref. n. r. e.).

■ American Jurisprudence states, "An exception to the parol evidence rule, which is similar in many respects to that of the doctrine of partial integration, is known as the 'doctrine of collateral contract.'" 30 Am.Jur.2d, Evidence, sec. 1049, p. 184. Under this doctrine, which has been applied by Texas courts, the prior or contemporaneous oral agreement may be proved by parol evidence, if the oral contract is independent of and collateral to the written contract and is not inconsistent with the written instrument. Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30 (1958), remanded on other grounds (Tex. Civ.App., Waco, 1959) 322 S.W.2d 409, error dismd., 159 Tex. 576, 325 S.W.2d 124 (Tex.1959); Arkansas Oak Flooring Company v. Mixon, 369 S.W.2d 804 (Tex.Civ. App., Texarkana, 1963, no writ); Gasperson v. Morris, 362 S.W.2d 392 (Tex.Civ. App., Forth Worth, 1962, writ ref. n. r. e.)

The Supreme Court in Preston v. Breedlove, 36 Tex. 96 (1871–2) said, "If the object and tendency of the [oral] evidence is to vary or control the original contract, it would not be admissible; but if the evidence tends to prove a verbal contract collateral to and contemporaneous with the written contract, though it refer to the same subject matter, and may affect the rights of the parties under the written contract, it may nevertheless be proven."

May relies upon Hubacek v. Ennis State Bank, supra, in which the Supreme Court reviewed rather extensively the parol evidence rule and held that parol evidence of a collateral oral agreement, made prior to the written contract, was admissible. The Court said that the "rule with respect to proof and enforcement of collateral agreements" is stated in the Restatement of the Law of Contracts, Vol. 1, section 240. We quote the rule there stated by the Court:

"(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and .

"(a) is made for separate consideration, or

"(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."

Since the decision in the Hubacek case in 1958, the Texas Legislature has adopted the Uniform Commercial Code, effective in 1966. (Acts 1965, 59th Leg., ch. 721). Section 2–202 of that Act, now Section 2.-202, V.T.C.A., Bus. & C., states the rule pertaining to parol or extrinsic evidence as it affects the final written expression:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(1) by course of dealing or usage of trade (Section 1.205) or by course of performance (Section 2.208); and

(2) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." (Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, sec. 1)

The official comment in connection with Section 2.202 states that under sub-paragraph (2) consistent additional oral terms "* * * may be proved unless the court finds that the writing was intended by both parties as a complete and exclusive state-

ment of all terms. If the additional terms are such that, if agreed upon, they would certainly have been included in the document in the view of the court, then evidence of their alleged making must be kept from the trier of fact."

The trial court in effect found that the written contract of January 19 was not intended by the parties as a complete and exclusive statement of all terms. The court submitted the question to the jury, and the jury also found that the parties did not intend the written instrument to be the complete and exclusive terms of their agreement. This decision was in the province of the court, and the finding of the jury becomes surplusage. Section 2.202(2) authorizes explaining or supplementing "[t]erms with respect to which the confirmatory memoranda of the parties agree * * * (2) by evidence of consistent additional terms unless the court finds * * *" the parties intended the writing to be a complete and exclusive statement of the terms.

The trial court's implied finding is amply supported by the evidence. May and Bush, who was a disinterested witness, testified that when the writing was signed, both May and Conner recognized that the paper did not encompass the feeding agreement, which they orally reaffirmed at the time. Conner himself testified the writing "just covered the meat of the contract," and May described it as "a memorandum * * in case one of us gets killed, that our folks can settle it."

Since delivery of the steers was delayed by agreement of the parties for more than three months, it was obvious the animals would remain during that period with Conner who would have responsibility for their feeding. May had looked at the cattle in January when they were on pear, hay, and protein blocks. At that time the steers were in ordinary winter condition. May testified that he was not so much interested in how much the steers weighed upon delivery but more in the flesh condition of the cattle. The oral agreement as to how

the steers were to be fed, if performed by Conner, was calculated to keep the steers in ordinary winter condition until time for delivery in April, and would avoid having the animals in "fat cattle" condition.

May testified that he buys from 50,000 to 60,000 head of cattle a year and that 7,500 to 9,000 head are calves and yearlings for future delivery. May said that flesh condition of the animals to be delivered in the future is one of the first subjects discussed with the seller. The evidence shows that the manner of feeding the animals determines their flesh condition. May testified that when he traded with Love to take the steers, their agreement regarding the manner of feeding the steers was identical with May's feed agreement with Conner and that the agreement with Love was oral.

Bud Harrell, an experienced dealer in cattle in the same area, testified that "* * a lot of things in our contracts are not written * * *" but that whether it was written or verbal, it was part of the contract. Harrell said " * * * a lot of things in our contracts are not written, it's agreed upon, it's part of your contract, yes, of course."

From the testimony in this case it is manifest that the usual practice in the area is to have an agreement as to the manner of feeding yearling steers intended for future delivery, and that such agreements commonly are oral and collateral to any writing between the parties. The record supports the implied finding of the trial court that the additional terms covering feeding of the steers would not certainly have been included in the writing by the parties. We hold that the court correctly admitted evidence offered in proof of such additional terms.

Under points one through fifteen, Appellant Conner urges applicability of the parol evidence rule and additionally asserts that the jury's answers to special issues 5, 6, and 7 are so against the great weight and

preponderance of the evidence as to be manifestly unfair and unjust.

We overrule the twelve points with respect to refusal of the trial court to apply the parol evidence rule to avoid proof of the additional oral terms of the contract.

Under the three special issues 5, 6, and 7 the jury found (1) that the parties did not intend the written contract to be a complete and exclusive expression of their agreement, (2) that Conner agreed with May that Conner would keep the steers on pear, hay, and cake or cubes, and (3) that Conner instead fed the cattle a ration substantially different.

We are required to consider and weigh all the evidence in the case which is to say we must weigh the evidence supporting the verdict along with the other evidence, including that contrary to the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952); Harrison v. Chesshir, 159 Tex. 359, 320 S.W.2d 814 (1959). We have so weighed and considered all the evidence and conclude that the jury's findings under special issues 5, 6, and 7 are not so contrary to the great weight and preponderance of the evidence as to be manifestly unfair and unjust.

Under the sixteenth point, appellant contends that May had no justiciable interest in the subject matter of this lawsuit because May had sold his contract with Conner to Jack Jones, who was not made a party.

We overrule this point. The record shows that after Love inspected the steers in April, a short time before the animals were to be delivered, he advised May that he would not take them. May and Love rescinded their contract by mutual agreement prior to filing of this lawsuit by May. Upon termination of their contract by agreement, May and Love were not subsequently obligated to each other, and May was left as the only party having a justiciable interest in the lawsuit against Conner. Dixie Distributors v. Lane, 211 S.W.2d 581

(Tex.Civ.App., Galveston, 1948, writ ref. n. r. e.); V.A.T.S. Bus. & C., sec. 2.209.

Appellant's last point is the error of the trial court in holding that the statute of frauds was inapplicable to the contemporaneous oral agreement. The statute invoked is Section 2.201, V.A.T.S. Bus. & C. It is clear from the statute, and from the Uniform Commercial Code Comment, that the writing required by this section "need not contain all the material terms of the contract," and that "[a] 11 that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." The statute does not prevent enforcement of additional oral terms if the writing itself evidences a contract for sale of goods, is signed by the party to be charged, and specifies a quantity. See subparagraph (a) and Comment.

The trial court correctly refused to hold the statute applicable to the contemporaneous oral agreement regarding the manner in which the steers were to be fed. Point of error seventeen is overruled.

We affirm the judgment of the trial court.

Affirmed.