## CAMERON COUNTY WATER IMPROVEMENT DIST. NO. 8 v. WESTERN METAL MFG. CO. OF TEXAS.

No. 3796.

Court of Civil Appeals of Texas. El Paso.

Feb. 9, 1939.

Rehearing Denied March 2, 1939.

Kelley, Looney & Norvell, of Edinburg, for appellant.

H. B. Galbraith, of Brownsville, and Chas. W. Bell and Bryan, Suhr, Bering & Bell, all of Houston, for appellee.

NEALON, Chief Justice.

In the District Court appellee was plaintiff and appellant was defendant. The parties will be referred to as they were designated in that court. The appeal is from a judgment in favor of plaintiff and against defendant.

Plaintiff alleged in the court below that it was engaged in the manufacture, sale, repair and installation of certain metal products, particularly metal culverts, pipe frames and irrigation gates, and that at defendant's special instance and request it sold and delivered to defendant certain described goods and products of the character mentioned between the 27th day of April, 1931 and August 16, 1932, the sales and deliveries being made at various times between said dates, the purchase price aggregating $3,395.45; that defendant expressly and impliedly contracted to pay said bills aggregating said sum, which was a reasonable price for said goods and the reasonable value thereof; that on October 1, 1932 defendant made, executed and delivered to plaintiff its promissory note in the amount of $3,517.05, together with interest and attorney's fees, to evidence said debt; that the articles so purchased were for the purpose of constructing repairs, extensions and other improvements upon defendant's right-of-way, plants or improvements, and for the maintenance and operation thereof, and that it was contemplated that the debt declared upon should be retired from current revenues, being based on adequate tax levies. An itemized statement of plaintiff's account was attached to its pleading. The note in question was executed by authority of a resolution of the board of directors of the District.

The Water Improvement District defended upon the ground that it was a water improvement district organized under Article 16, Sec. 59, of the Constitution of Texas, Vernon's Ann.Civ.St. and governed by Chapter 2, Title 128, of the Revised Statutes of 1925, Vernon's Ann.Civ.St. art.

7622 et seq., and hence not authorized to contract or incur any indebtedness unless and until authorized by vote of the property-taxpaying voters residing within the district; that the alleged contract was of the character contemplated by Article 7739, Revised Civil Statutes, and that the contract was not awarded by the board of directors of the District to the lowest bidder, after giving notice by advertising and posting notices as required by that article; that at the time of the purported sales the defendant had not levied any assessments for maintenance and operation against the lands within the district, and had not sold any of its construction bonds and did not have any funds in its maintenance and construction fund out of which the purchase price could be paid, nor did it have any other available funds subject to its control out of which payment could be made. Defendant denied that it was contemplated that the purchase price should be paid out of current revenues, and further denied that the District was at any time during 1931 or 1932 in condition to furnish water by its system of canals and laterals sufficient to irrigate its lands upon demand of the owners thereof, and alleged that it has never owned a canal system and other facilities adequate to enable it to irrigate any of the lands within the district upon demand.

Plaintiff countered with "supplemental amended" petition seeking recovery upon a quantum meruit upon the theory that defendant had the benefit of full performance upon the part of plaintiff and had accepted and used the articles for which plaintiff sought payment, and that such use and benefit was equal in value to the amount stated. As to this defendant pleaded the two and four years statutes of limitation. The case was tried to the court without the aid of a jury. As stated, judgment was rendered in favor of plaintiff for $4,681.19, with interest from the date of judgment. Prayers of plaintiff for injunction and for mandamus were dismissed without prejudice.

Other facts will be adverted to as found necessary in the statement of our conclusions of law.

Opinion.

This is the second appeal of this cause. Upon the former appeal the Fort Worth Court of Civil Appeals reversed the judgment of the District Court sustaining a general demurrer. 105 S.W.2d 700.

652

The defenses interposed to plaintiff's cause of action have been stated. Findings of fact and conclusions of law were neither filed nor requested. Therefore, if there is any substantial evidence to sustain the judgment of the court it must be affirmed. The most serious objection urged against the validity of plaintiff's claim is that the obligation was an inhibited indebtedness within the meaning of Sec. 59 of Article 16 of the Constitution. This calls for a determination of what is there meant by the word "indebtedness." This provision being similar in language and purpose to the limitation imposed upon the power of cities to contract indebtedness by Sec. 5, Article 11 of the Constitution, the judicial interpretations of that provision will control. It was held by the Supreme Court in City of Corpus Christi v. John Woessner, 58 Tex. 462, that city warrants issued on account of expense of a city which did not exceed the current revenue derived from taxation permitted by law to be levied to meet current expenses did not create a debt prohibited by law unless accompanied by a special tax to meet interest and create a sinking fund. Following this authority it was held in City of Cleburne v. Gutta Percha & Rubber Mfg. Co., Tex.Civ.App., 127 S.W. 1072, 1073, that a note given by a city and maturing within one year of its execution did not create such a debt as was prohibited by Article 11, Sec. 5 of the Constitution and Article 488 of the Revised Statutes (as then numbered). It was there said: "The true test of whether or not the note was a debt within the meaning of the constitutional inhibition is: Does it impose a burden on the revenues of the city for future years?" citing Corpus Christi v. Woessner, supra; City of Terrell v. Dessaint, 71 Tex. 770, 775, 9 S.W. 593; City of Tyler v. Jester & Co., 97 Tex. 344, 78 S.W. 1058. These cases apply the principles which control the instant case, and our inquiry, then, is as to whether or not the facts bring it within the rule thus enunciated. If the only objection to be found is that irregularities accompanied the making of the purchase and the incurring of the obligation through the failure of the board of directors to first make the requisite budget and assessment, this and like irregularities were cured by the subsequent act of the District in receiving and using the materials sold by plaintiff to defendant, the price of which is the subject matter of this suit. City of Tyler v. Jester & Co., supra.

Was there sufficient evidence to support a finding that the obligation declared on was given by the District for materials used in the construction of repairs and temporary improvements upon its irrigation system and was to be paid out of its current revenues? Was this the understanding of the parties entered into in good faith? From an abandoned pleading of defendant the following admission was introduced in evidence: "This defendant now admits that the materials described in the exhibits attached to plaintiff's petition were received by it. That a portion of the canal system was partially, but inadequately constructed and the materials so purchased were temporary installments, as culverts, syphons and gates in a vain attempt to make certain of the lands within the District irrigable."

In addition to this it appears that C. P. Barreda was president of the appellant district; that he owned most of the land in the district, owning over 9,000 of the 10,000 acres comprising it; that his wife, nephew, and some of his nieces owned land therein; and that almost 800 acres along twelve or thirteen miles of canal were watered up until 1935. He testified that the District "may have" levied a flat rate on lands sold by him within its boundaries. The "Barreda Corporation," of which Mr. Barreda was president and of which he and his wife and nephew owned about 99 percent of the corporate stock in 1931, sold land in the district.

Stuart, the salesman who took the orders for the materials, testified that his negotiations were mainly with Mr. Barreda, and that the latter told him that he did not "feel it advisable to construct permanent structures at that time," and that the metal products to be furnished by plaintiff were what was needed by reason of the "flexibility and portability" of the metal units offered by plaintiff, though the permanent structure of the system was to be of concrete. From the documents introduced in evidence it appears that some of the sales were made in 1931 and others in 1932, and that each sale was made upon 30 days time with a provision for interest after 90 days from the date of the invoice. The note declared upon was payable in six months from its date. Stuart further

testified that the District at that time was functioning and that he had seen canals that crossed the highway just east of the town of Barreda, which watered lands north of the highway. E. B. James, another witness, testified that in 1931 and 1932 Mr. Barreda represented the land to be irrigable and had a pumping plant on the river, and that upon this representation from 800 to 1,000 acres were sold. He further testified that the District's canals occasionally functioned and furnished water in the District for at least two years; that he had sold some of the land as irrigable land for from $500 to $1,000 per acre; and that the District's canals watered that land for approximately two years after the sale. Some of the fixtures purchased from plaintiff were still being used at the time of trial, but there is sufficient evidence that they were purchased for and devoted to temporary and emergency use. The language used by Mr. Justice Smith, of the San Antonio Court of Civil Appeals, in Brady v. Hidalgo County Water Control and Improvement District No. 12, 56 S.W.2d 298, 301, affirmed by Supreme Court, 127 Tex. 123, 91 S.W.2d 1058, is peculiarly applicable here: "So far as the present record shows, the district lawfully incurred the obligations herein sued upon. It accepted the resulting benefits, slight though they proved to be, and appropriated the same to its own uses, and yet seeks to repudiate those obligations. It is obvious that no individual or private corporation would be permitted to thus escape its solemn obligations, and we see no reason why public or quasi public corporations should not be held as rigidly, if not more rigidly, to such obligations."

The Commission of Appeals, in its opinion, which was adopted by the Supreme Court in affirming the judgment of the Court of Civil Appeals, expressed itself as agreeing with the conclusions reached by the Court of Civil Appeals. In that case the District sought to defend upon the ground that Brady, who was originally employed as purchasing agent and office manager, and thereafter had agreed to perform duties as assistant general manager and tax assessor and collector, had no right to recover upon the ground that the indebtedness should have been paid exclusively out of a construction fund, and that neither a construction nor maintenance fund ever existed. The effect of the Su-

preme Court's judgment is that Brady had a right to recover, and direction was given as to the manner in which the right should be enforced.

There was sufficient evidence to find that the obligation incurred and declared upon in this case was intended to be paid out of current revenues for the year of the contract and that, therefore, it was not within the inhibition of the constitutional provision invoked. See American Roads Machinery Co. v. City of Ballinger, Tex.Civ.App., 210 S.W. 265, writ refused; McNeal v. City of Waco, 89 Tex. 83, 33 S.W. 322; Payne v. First National Bank, Tex.Com.App., 291 S.W. 209.

■ There was no error in the refusal of the Court to sustain the defendant's contention that the cause of action upon quantum meruit was barred by either the two or four years statute of limitation. Trial was had upon plaintiff's first amended original petition, which was filed April 21, 1936, and its second supplemental petition, which was filed March 19, 1938. Plaintiff's original petition was not introduced in evidence and neither the date of its filing nor its contents were shown. Defendant pleaded the legal conclusion that any cause of action that plaintiff might have against defendant upon the implied contract was barred by the statutes of limitation. The amended original petition alleged that the defendant both expressly and impliedly contracted to pay the debt alleged to be due, that the goods were reasonably priced and of reasonable value to defendant in the amount sued for, and were constructed to perform the functions for which defendant put them to use, "and have performed and do perform such functions." Defendant did not show that the cause of action sought to be recovered upon, which it now asserts was barred by the statutes of limitation, was based wholly upon and grew out of a new, distinct, or different, transaction and occurrence from that alleged in the original petition. Provided the later pleading was based upon the same transaction or occurrence declared upon in pleadings filed within the period of limitation the inclusion therein of new or different allegations of fact, or the allegation of additional or different grounds of liability would not bar recovery upon the pleading so amended. Vernon's Annotated Civil Statutes, Article 5539b. There was no error in the action

of the court with respect to the pleas of limitation.

The evidence is sufficient to sustain the court's findings and to support the judgment rendered. It is therefore affirmed.