## B. B. GREEVER V. GOLDIE PERSKY, GUARDIAN.

No. 7943. Decided November 4, 1942.
Rehearing overruled December 2, 1942.
(165 S. W., 2d Series, 709.)

*Ray Bland, John C. Kay* and *Kilgore & Rogers,* all of Wichita Falls, for petitioner, B. B. Greever.

It was error for the Court of Civil Appeals to hold that the amount contended for was interest as a matter of law, when in fact it was a commission agreed to be paid by Persky to Greever, for procuring the loan for him. McDaniel v. Orr, 30 S. W. (2d) 489; Maryland Casualty Co. v. Smith, 40 S. W. (2d) 913, Matthews v. Tibbitt, 120 S. W. (2d) 503.

*J. R. Wilson,* of Wichita Falls, for respondent, Goldie Persky.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This is a usury case. There is no dispute in the testimony of most of the material points in the case. The facts, as testified to by the defendant, B. B. Greever, are substantially as follows: In the year 1936 I. B. Persky was in financial difficul-

ties and needed money. He contacted Greever, who was not in the loan business, and offered to pay him a commission of three per cent per month for a period of ninety days if Greever would use his credit and procure for him a loan of $15,000.00. Greever, who did not have the money himself, but did have the collateral with which to borrow the same, borrowed on his own notes and collateral $10,000.00 from one bank and $5,000.00 from another, and deposited the same in the bank in his general checking account. Persky had nothing to do with the procuring of these loans. Greever then advanced the money to Persky in installments as he needed it, taking his notes therefor, payable to Greever in thirty days. These notes provided for interest after maturity. As these notes matured from time to time they were renewed with similar notes. Persky actually paid Greever the three per cent per month on the loans, not only during the first ninety days as per the original agreement, but continued to pay the three per cent on the loans for several months thereafter, and Greever accepted same as "commissions." These payments, which were credited by Greever as "commission" were not paid at the time the renewal notes were executed, but were paid thereafter at irregular intervals and in irregular amounts. When Greever would receive a check for one of these irregular payments he would mark it "commission," and credit it accordingly. Greever testified positively that Persky only agreed to pay a commission for a period of ninety days, and whatever commissions were paid thereafter were paid voluntarily by Persky, without any previous agreement obligating him to do so. It appears to be agreed that none of the payments made as "commissions" was intended by either of the parties to be applied on the principal of the notes given by Persky to Greever. The jury in answer to special issues found, in effect, that the money advanced by Greever to Persky was a loan, but that it was the intention of both Persky and Greever that the sums paid as commissions should constitute "compensation for B. B. Greever's services in procuring from the bank upon his own credit, or his own securities, the money which he advanced to I. B. Persky." Upon motion, the court rendered judgment non obstante veredicto, holding as a matter of law that the transactions were usurious loans, and that all payments made as "commissions" should be applied as interest, and allowing plaintiff to recover accordingly. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for a new trial. 156 S. W. (2d) 566.

It is defendant's view that the payments in question were paid to him as commissions for lending his credit to Persky and obtaining for him the loans from the banks. According to Greever's own testimony he borrowed the money from the banks on his own notes and collateral, and placed it in his bank account; and then lent it to Persky from time to time as he needed it. He took Persky's notes for the loans, and when they matured they were renewed by mutual agreement. As the money was collected it was placed by Greever in his own account. There is nothing in the evidence to show that the money borrowed from the banks was set aside to Persky, or that, as Persky repaid it, it was in turn paid over to the banks. Stripped of any unnecessary details, it appears to be a case in which Greever furnished the collateral and borrowed the money from the banks on his own account, and lent it to Persky for a consideration in excess of ten per cent per annum.

■ An agent or a broker may lawfully charge a commission for his services in negotiating a loan with a third party, and such commission will not be taken into consideration in determinng whether or not the loan is usurious, where it is done in good faith, and not as a mere cloak to avoid the usury law. But, in order to be valid it must appear that the loan was ultimately made with or passed on to a third party, and that the extra charge was made in good faith for so negotiating the loan. Such a charge may not be made where the party charging the commission is merely lending his own money. 42 Tex. Jur. 933; Trinity Fire Ins. Co. v. Kerrville Hotel Co., 129 Texas 310, 103 S. W. (2d) 121, 110 A. L. R. 442; Deming Inv. Co. v. Giddens (Tex. Civ. App.), 41 S. W. (2d) 260 (writ dismissed) ; Deming Inv. Co. v. Clark (Tex. Civ. App.), 89 S. W. (2d) 853; Adleson v. B. F. Dittmar Co., 124 Texas 564, 80 S. W. (2d) 939; Nevels v. Harris, 129 Texas 190, 102 S. W. (2d) 1046, 109 A. L. R. 1464. In this case the party charging the commission did not negotiate the loan to a third party, but made it himself out of his own funds; and, as a consequence, the commission charged and collected by him must be included as interest charged for the use of the money lent.

■■ It is insisted by the defendant that the commission charged by him constituted a lawful charge for the sale and advancement of his credit, to enable the borrower to obtain the money. It may be accepted as true that where one acts in good faith, and not for the purpose of concealing a usurious loan made by him, he may sell his credit to a borrower for a consideration;

and to that end may endorse, guarantee, or become surety for the payment of a loan made to the borrower by a third person at the highest lawful rate of interest, without rendering either the contract for the sale of his credit or the loan made by the third party usurious. Oil City Motor Co. v. C. I. T. Corp., 76 Fed. (2d) 589, 104 A. L. R. 240. See also 21 A. L. R. 895; 105 A. L. R. 813. But, again, in order for such a transaction to be legal, the sale of the credit must be made for the purpose of enabling the borrower to obtain the money from a third party, or the transaction must be something other than a mere loan of money. The fact that the party has to pledge his credit or collateral with a third party in order to obtain the funds which he himself lends to the borrower does not authorize him to charge the commission in addition to the highest legal rate of interest. Chakales v. Djiovanides, 161 Va. 48, 170 S. E. 848. If he makes the loan himself, whatever trouble or hazard is incurred by him in securing the money from a third party in order to enable him to make the loan is in contemplation of the lawfully compensated for by the payment of the lawful rate of interest. 42 Tex. Jur. 932; Forreston State Bank v. Brooks (Tex. Civ. App.), 51 S. W. (2d) 645; Independent Lbr. Co. v. Gulf State Bank (Tex. Civ. App.), 299 S. W. 939 (writ refused); National Bond & Mortgage Corp. v. Mahanay (Tex. Civ. App.), 70 S. W. (2d) 236.

Greever relies heavily on the case of McDaniel v. Orr (Com. App.), 30 S. W. (2d) 489. However, the facts in that case are clearly distinguishable from the facts in the case at bar. In that case the money was borrowed to construct a building. The debtor, in addition to repaying the principal, paid the creditor $250.00 for "services." The creditor pleaded and offered to prove that the $250.00 was paid for services rendered by him to the debtor in connection with the construction of the building. On the other hand, the debtor contended that it was paid as interest for the use of the money. This Court simply held that it was a fact issue as to whether the $250.00 was paid for the use of the money or for the alleged extra services in connection with the construction of the building. Admittedly, a lender may, without violating the usury law, make an extra charge for any distinctly separate additional consideration other than the simple lending of the money (42 Tex. Jur. 932; Nevels v. Harris, 129 Texas 190, 102 S. W. (2d) 1046) ; and where there is any dispute in the evidence as to whether there was

any other separate and additional consideration, a question of fact is raised for the jury. But since, according to his own testimony, Greever did not render any service whatever to the borrower other than procuring and lending the money to him, for which he had no right to charge an extra commission or bonus, there was no question of fact to be determined by the jury as to whether the parties intended that the commission should be charged as interest for the use of the money or as compensation for Greever's services in procuring the money from a third party.

■ Under the above authorities the three per cent commission collected, as per the contract, during the first ninety days after the lending of the money to Persky was clearly usurious, and would form the basis for the statutory penalty. It will be noted, however, that the original contract to pay a commission covered only a period of ninety days after the original notes were executed. When these notes matured they were renewed by the execution of similar notes. Persky not only paid the three per cent commission during the first ninety days, but continued to pay it, and Greever continued to accept it, after the expiration of the ninety-day period. But Greever denied that there was any contract or agreement by which Persky was obligated to continue to pay such three per cent commission afer the expiration of the first ninety-day period. He testified that the payments were made by check and that he marked thereon "commission," and applied them as such. He requested the court to submit to the jury an issue as to whether there was such a contract, but the court declined to submit it. Certainly no such contract was established by the undisputed evidence. It seems to be very well settled in this State that in order to authorize the recovery of the penalty provided for under our statutes for the collection of usurius interest, there must have been a *contract* to pay the usurious interest so collected. Voluntary acceptance of interest in excess of the lawful rate is not sufficient. Arts. 5071, 5073, R. C. S. 1925; 42 Tex. Jur. 896; Palmetto Lbr. Co. v. Gibbs, 124 Texas 615, 80 S. W. (2d) 742; Continental Savings & Building Assn. v. Wood (Tex. Civ. App.), 33 S. W. (2d) 770, aff. (Com. App.), 56 S. W. (2d) 641; Federal Mortgage Co. v. Davis (Tex. Civ. App.), 100 S. W. (2d) 717, 721, aff. 131 Texas 46, 111 S. W. (2d) 1066; Rest Haven Cemetery v. Swilley (Tex. Civ. App.), 127 S. W. (2d) 996. Since the evidence did not conclusively establish a contract to pay the three per cent commission after the

expiration of the first ninety-day period, there was material error on the part of the trial court in allowing a recovery of double the amount of the three per cent commission paid after the expiration of the first ninety-day period, without having submitted to the jury the issue as to whether or not there was a contract to pay such commission. If upon another trial it should be found that the sums of money collected after the ninety-day period and credited by Gever as commissions, were collected without a contract to credit same as commissions, all such payments should be credited on the debt.

■ Plaintiff's petition alleged that the total interest paid within two years of the filing of the suit amounted to $4,345.00. It listed each payment so made. Upon the trial it was discovered that an item of $150.00 paid October 2, 1937, was omitted from the list of payments set out in the petition, although it was included in the total of $4,345.00, whereupon plaintiff, with leave of the court, filed a trial amendment covering such omitted item. This trial amendment was filed February 14, 1941. The Court of Civil Appeals was of the opinion that the filing of the original suit was not sufficient to stop the running of limitation on the $150.00 item above mentioned, and since that payment had been made more than two years prior to the filing of the trial amendment, the right to recover thereon was barred by limitation. We are not in accord with this view. This item of $150.00 was included in the total item of $4,345.00, upon which recovery was sought in the original petition. The trial amendment merely gave the date and amount of one of the items included therein. It is clear that the cause of action stated in the trial amendment is a part of the original action. It is not based upon and does not grow out of a new, distinct, or different transaction or occurrence from that stated in the original petition, and is therefore not barred by the statute of limitation. General Laws, 42nd Leg., 1931, p. 194 (Vernon's Annotated Revised Statutes. Art. 5539b) ; 28 Tex. Jur. 213; Goodwin v. Hidalgo County Water Control & Improvement Dist. No. 1, 58 S. W. (2d) 1092; First State Bank & Trust Co. of Rio Grande City v. Ramirez, 133 Texas 178, 126 S. W. (2d) 16; Cameron County Water Improvement Dist No. 8 v. Western Metal Mfg. Co. of Texas (Tex. Civ. App.), 125 S. W. (2d) 650.

The suit was brought by Mrs. Goldie Persky as guardian of the estate of I. B. Persky. By plea in abatement the defend-

ant challenged the right of the guardian to maintain the suit as such; and as ground therefor asserted that the judgment appointing a guardian for I. B. Persky's estate was void for lack of proper notice and hearing at and prior to the entry thereof. The order appointing the guardian appears to be regular on its face, and recites proper notice. Consequently, it was not void and subject to a collateral attack, such as was made in this case. Being regular on its face, it was sufficient to protect the defendant against a second action on the same cause of action, and for that reason he has no right to complain.

The judgment of the Court of Civil Appeals, reversing the judgment of the trial court and remanding the cause for a new trial, is affirmed.

Opinion delivered November 4, 1942.

Rehearing overruled December 2, 1942.