**Z. P. (Paula) CHAGAS, Appellant,**

v.

**W. E. IRVIN, Appellee.**

**No. 17121.**

Court of Civil Appeals of Texas, Fort Worth.

July 10, 1970.

Rehearing Denied Oct. 2, 1970.

Ernest May and Kleber C. Miller, Fort Worth, for appellant.

Harry N. Ward, Brown, Crowley, Simon & Peebles, and M. Hendricks Brown, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Plaintiff, Mrs. Z. P. (Paula) Chagas, sued defendant, W. E. Irvin, for double the amount of usurious interest allegedly paid to and collected by him, for attorney's fees because thereof, and for an additional amount alleged to have been fraudulently converted. Plaintiff has appealed from an adverse (take nothing) judgment by the court, sitting without a jury.

Reversed and remanded.

Principal basis for reversal lies in our holding that there was no value, or insufficient value, in the consideration upon which the defendant placed his reliance as a support for those parts of the plaintiff's

contracts in fulfillment of which she paid usurious interest.

In this opinion we adopt the method of reaching conclusions upon principles of abstract law; then apply such principles to the facts of the immediate case.

Valuable reference may be had to the case of Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709 (1942). The Supreme Court held that while one may sell (the use of) his credit *for a consideration*; and to that end may endorse, guarantee, or become surety for the payment of a loan made to the borrower *by a third person* at the highest rate of interest, yet, in order for such a transaction to be legal (the charge or receipt of consideration for): such use of his credit must be for the purpose of enabling the borrower to obtain the money *from a third party*, or the transaction must be something more than a mere loan of money. (Emphasis supplied.)

In *Persky* it was further held that, "The fact that the party has to pledge his credit or collateral with a third party in order to obtain the funds which he himself lends to the borrower does not authorize him to charge the commission *in addition to the highest legal rate of interest*. (Cites authority). If he makes the loan himself, whatever trouble *or hazard* is incurred by him in securing the money from a third party in order to enable him to make the loan is in contemplation of the law fully compensated for by the payment of the lawful rate of interest. (Cites authority)." (Emphasis supplied.)

In *Persky* it was further held that, "Admittedly, a lender may, without violating the usury law, make an extra charge *for any distinctly separate and additional consideration* other than the simple lending of the money (citing authority); and where there is any dispute in the evidence as to whether there was any other separate and additional consideration, a question of fact is raised for the jury." (Emphasis supplied.)

In *Persky* it was further held that, "It seems to be very well settled in this State that in order to authorize the recovery of the penalty provided for under our statutes for the collection of usurious interest, *there must have been a contract to pay the usurious interest so collected. Voluntary acceptance of interest in excess of the lawful rate is not sufficient.* (Cites authority)." (Emphasis supplied.) Supplemental holding in the case was that, in the event of a fact issue raised, it was part of the burden of proof of the plaintiff seeking to recover on the theory of usurious interest paid to show that there was a contract by reason of which his money was paid.

■ Most certainly, from the foregoing, and in accord with logic, a person who is owed an amount, as for services already rendered, by one who desires to borrow money may lawfully agree to lend such other the funds desired and to add thereto an amount agreed upon as already owing (for services, etc.) at the maximum lawful interest rate in making up the total agreed to represent the principal sum the other party contracts to repay. When such a transaction is accomplished there is or may be an agreement and contract thereupon on the part of the debtor that he who makes the loan may charge and collect the whole of the principal sum thus arrived at, plus interest thereon at the highest lawful rate of interest. Such a transaction would be lawful.

■ Furthermore, such a lender might even add a specified amount to the money so lent, as above hypothesized, and to charge interest thereon, if there is an attendant additional contract between the parties whereby the lender—in consideration of payment made to him in advance—agrees to render services to the borrower in the future. However, important to be considered, is the necessity and legal requirement that the obligation of the lender in respect to such services (for which he is paid in advance) must be defined or be ascertainable so that there could be a compu-

tation of the amount due to be returned by him in the event there should be a failure on his part to render the total, or any part, of the services contracted "to be rendered". Indeed, the circumstances of such a transaction should be such that in the event of a failure on his part to fully perform the borrower would be entitled to demand the full return of the advance amount so paid (along with the interest charged on said amount), less a just amount the lender might establish as the borrower's obligation to him in the event there should be a partial performance of his contract to render services.

However, no such amount thus added to the debt (as for the lender's personal services), in advance of the loan of the money, could be justified by any anticipated right on his part to collect for the value of his services under a theory of *quantum meruit*. Application of that doctrine necessarily rests in the right to demand "restitution" under the rules of law relating thereto. See 62 Tex.Jur.2d, p. 466, "Work, Labor and Materials", Sec. 1, "In general", and p. 472, Sec. 5, "Intention that service be compensated". There must have been a benefit to one already in receipt of services rendered whereby he would be unjustly enriched if compensation not be paid therefor, by reason of which the law will declare the beneficiary to be obligated to make restitution to him who rendered such services for the reasonable value thereof.

■ It follows that there can be no proper test of the validity of the loan contract which considers value of the services under the theory of *quantum meruit*, and that it is essential to the validity of the contract that such a lender's commitment relative to the matter of services "to be rendered" either be reasonably certain as of the time of the promise of them (as consideration), or capable of reasonable ascertainment as of such time. In the event it is not possible then the promise of future performance would be "illusory", and in law would not amount to consideration which served to support any return obligation of the other party as compensation for his promise. Restatement of the Law, Contracts, Sec. 32, "Requirement of Certainty in the Terms of an Offer"; Williston on Contracts, Revised Edition, Vol. I, p. 48, "Making of Offers", Sec. 24, "Requirements of a legally sufficient promise", p. 343, Sec. 103E, "Promises which are not binding are insufficient consideration".

Under the facts of the instant case the defendant had excellent credit with several banks, while the plaintiff's credit with banks was non-existent. It was established, and not contradicted, that in the exercise of sound banking practice no bank would lend her the sums of money which she required to accomplish her purposes. No bank or other "third party" ever loaned (or was willing to lend) any money to plaintiff.

However, plaintiff and defendant had an intimate relationship. Though the defendant had no money of his own to lend plaintiff (there was shown to have been one minor exception not important for our purposes) he was willing to obtain amounts required by the plaintiff on several different occasions. He acted (in her behalf (?)) by going to a bank, or to banks, and borrowing the money she required. Then he delivered the money to her in exchange for her promise to him to make a return delivery at a time subsequent.

On one occasion (about December 23, 1963) the defendant handed to her the sum of $15,000.00 upon an oral promise to deliver said amount back to him plus an additional sum (not specified) to compensate him for the antecedent "use of his credit" and for services "rendered and to be rendered" thereafter. He had borrowed this $15,000.00 from his own bank on a "90 day basis". The plaintiff was unable to conveniently make her return delivery within 90 days. She gave the defendant $1,000.00 at approximately the end of the 90 days. The defendant testified that he did not specifically remember why he accepted the

$1,000.00 from her, but he "supposed" it was for services "rendered and/or to be rendered". However, about 100 days or so after the delivery of the $1,000.00 plaintiff was able to make a return delivery to the defendant, and she did so. She gave him $18,784.54. Using the major portion of what she gave him, defendant paid his bank the $15,000.00 plus the interest he was obliged to pay. There was uncertainty and no more than a fact issue raised whether there was an advance contractual agreement for any return delivery of any amount above the $15,000.00, plus interest at a lawful rate. In this respect the transaction described was unlike any of the other transactions of the parties. In all the other transactions the plaintiff contractually obligated herself for specified amounts to be paid the defendant at the time of her return delivery, or likewise contracted when the parties contracted in renewal and extension of such obligation on her part. The amount of interest provided to be paid on these contracts appeared to be within the limit allowed in law.

Plaintiff required additional funds on January 15, 1965. She desired the sum of $30,000.00. The defendant borrowed such amount from his bank and delivered it to her. At the same time he obtained a note from her (to him) for $35,000.00. Defendant's testimony was that the $5,000.00 difference in these amounts was for the plaintiff's "use of his credit" and for services "I had rendered, and was rendering". On February 18, 1965, plaintiff paid defendant $35,198.33. Defendant repaid the bank from which he had obtained the $30,000.00, plus the interest he owed thereon.

On July 15, 1965, the plaintiff needed $28,000.00 to accomplish a personal objective. The defendant borrowed some money from his bank and delivered $28,000.00 to her. At the same time he had the plaintiff sign a note payable to him for $32,200.00, plus interest. His testimony was that the $4,200.00 difference in the two amounts was for plaintiff's "use of his credit", "interest that I would have to pay", and as a "token payment on what I was doing for her".

Plaintiff's $32,200.00 note was not paid at the time the parties originally contemplated. On the 22nd of December, 1965, the note remained unpaid. A new note was made by plaintiff to defendant in the amount of $39,166.00. The defendant testified, in accounting therefor, that the increase was for the renewal of the existing indebtedness and for the "continued use of (his) credit". There was no additional amount borrowed by the defendant to deliver to plaintiff at time of the "renewal". The defendant characterized what he termed as the "use of his credit" in connection with such "renewal" as "forced" by the plaintiff. There was complete absence of any testimony that any part of the consideration for the increase was on account of "services" on his part, either "rendered" or "to be rendered".

No part of the $39,166.00 note was paid on June 28, 1966. Another note was executed by plaintiff to defendant on this date in renewal of that antecedent,—in the sum of $45,500.00, plus interest to accrue thereon. The testimony of the plaintiff was essentially the same as before, i. e., that the increase was to compensate him for "use of his credit and/or the tying up of his credit", and for services "rendered and/or to be rendered".

We could carry our description of the history of the parties' transactions further, but the foregoing will suffice in demonstrating facts upon which we found our decision to reverse the judgment of the trial court. The proof upon which the defendant relies in his claim that there was no usury in the plaintiff's payments to him was that his contractual "considerations" to plaintiff, in exchange for which she made her original contractual promises to pay the amounts she did pay in discharge (except as applied to the $15,000.00 transaction where perhaps there was no "ad-

vance" contract to make the $1,000.00 and $18,784.54 payments) consisted of:

(a) use of his credit, and/or

(b) forced continuance of such use of credit, and also—in most of the instances—

(c) services rendered by him to plaintiff for which compensation was due and owing—or conceded to be,—and/or

(d) services "being rendered", i. e., services not already rendered at time of the plaintiff's contractual promise(s) to pay defendant (evidenced by her notes) which were anticipated "to be rendered" by him. (Note: There was no contractual stipulation or oral agreement as to what such services would be—or what amounts would become due because of their promised rendition.)

A reversal of the judgment of the learned trial court is required because of the absence of proof on behalf of the defendant showing his entitlement thereto either (a) on the theory that the plaintiff had failed to prove that she had paid usurious interest under and because of her contractual obligations, as, for instance, where there was countering evidence that payment of a sum which appeared to amount to usury was not in fact paid because of the contractual obligation but for a completely different reason, or—(b) on the theory that the value of his own consideration(s) delivered to plaintiff either justified and supported the plaintiff's promise(s) to pay, and her payment(s), those amounts which in law would constitute usury if not shown to have been for something other than the use, forbearance or detention of money.

■ In the first place, under the circumstances we have described, there was not, in contemplation of law, any "use" by plaintiff of the defendant's credit. Rather, under the *Persky* case (140 Tex. 64, 165 S.W.2d 709), was the transaction in each instance (except, perhaps, the $15,000.00 transaction) a simple money lending trans-

action between plaintiff and defendant. In view of *Persky* we are obliged to hold that the defendant, upon the strength of the plaintiff's credit with him, loaned her the amount he delivered into her hands, and there was by the plaintiff no "use of his credit" in obtaining loans from any third person. The fact that the defendant borrowed the money from bank or banks in order to deliver said amount to plaintiff could not effect any change of the status of the defendant from that of "lender" (as applied to the plaintiff) to the character of one whose credit was "used" by or for the benefit of plaintiff. Therefore, what the defendant contends to have amounted to at least part of the consideration furnished by him must be disregarded. Under the law what the defendant deemed as "use of credit" was not such use as might be attributed substance. Therefore, it could not have been consideration which would support any contractual obligation of the plaintiff.

To hold differently would be to unconscionably add to the "finder's fee" system which many sound thinkers deem a device to circumvent usury laws. If it were lawful that a person could safely and legally make loans of "borrowed" money at illegal rates of interest (provided he first borrowed the money requisite to making them) it is unlikely that there would be a shortage of such loan transactions.

■ In the second place, while the value of a lender's services "already rendered" to the borrower may—by agreement of the parties—be added to the amount of money loaned, and the obligation to pay for such services treated as paid in arriving at the resultant total loan principal sum agreed upon (and which, according to the defendant, were added in the instant case, albeit for an amount unspecified) an additional amount for services "to be rendered" in the future may not likewise be added unless the requirements of law are met. Under the circumstances defendant's services "to be rendered" were of illusory character

and therefore did not qualify as consideration which would support plaintiff's contracts. What the defendant's future services should be were wholly nebulous and undefined, and incapable of any reasonable ascertainment. Therefore, defendant's promise(s) to perform them could not be accorded the status of consideration which would support the contract. Furthermore, it was impossible to determine from the evidence in the case what specific amount would be due the defendant under any of the contracts if he should make performance of the services "to be rendered". There was no proof that plaintiff, in paying the notes, paid any part of what would normally be the usury included therein for a reason unrelated to her contractual promise.

Defendant's proof demonstrated a commingling of such diverse "considerations", i. e., those already "rendered" at time of the loan transaction(s) with illusory services "to be rendered" at a subsequent time. Therefore, proof was wanting as to the part of the defendant's consideration which might be accorded the character of lawful "consideration" and the part which could not thus qualify. In the absence of evidence segregating such, a burden incumbent upon the defendant, proof must be deemed to have failed even if it be assumed (which we do not) that there was something existent which would entitle us to hold that if any part of the defendant's performance be treated as lawful consideration it, in and of itself, would be sufficient consideration to support the contract.

The defendant has neither countered plaintiff's *prima facie* case so as to entitle him to defeat her proof of usury,—or established any "offset" to which he is or may be entitled. However, we are unable to determine proper amounts in either respect in order to make application of the law thereto. Furthermore, the matter of plaintiff's attorney's fees must be determined in the trial court. Of these there has been no waiver of right to recover. It does not seem possible for this Court to finally dispose of any part of the case, or cases, involved on appeal. Certainly it would be impracticable to attempt to do so. Our decision, therefore, is to remand all and every portion in order that there may be another trial.

In view of another trial, at which the case will perhaps be more fully developed, we make mention that should the defendant fail to counter plaintiff's proof under a fraud count upon her allegations that the defendant fraudulently converted $2,250.00, plaintiff might be entitled to recover absent some new or additional evidence by the defendant in support of his plea under statutes of limitation. On the trial from which the instant appeal was taken the state of the record was such that the defendant would not have been entitled to defeat the plaintiff's claim therefor on his limitation plea. We forego discussion.

All the parties' points, counter-points, and cross-points have been considered. Except where sustained, as indicated in our opinion, they are severally overruled. We forego further discussion in view of the necessity of another trial and since no good purpose would thereby be served.

Judgment is reversed, with the cause remanded for another trial.

## ON MOTION FOR REHEARING

Rehearing denied.

LANGDON, Justice (dissenting).

In my opinion the motion for rehearing filed by the appellee should be granted, the original opinion of this Court withdrawn and an opinion affirming the judgment of the trial court substituted in lieu thereof.

The case was tried before the court without a jury. Findings of fact and conclusions of law were made and filed by the court and appear in the paragraphs next following.

"The Court does make the following findings of fact and conclusions of law in

compliance with the request of the plaintiff after the overruling of the plaintiff's amended motion for new trial rendered herein on the 6th day of January, 1970, and does find as follows:

"(1) No one of the contracts or promissory notes introduced in evidence and made the subject matter of this suit were usurious on their face.

"(2) The plaintiff did not testify that she intended any payment over and above any money obtained from the defendant Irvin and over and above any 10% interest figured on the loan of such money to be usury.

"(3) Defendant did not loan to the plaintiff but $3,000 of his own money in all of the loans complained of by the plaintiff, such $3,000 amount being a part of the $28,000 loan described in plaintiff's paragraph 8 of her petition filed in July of 1969.

"(4) The defendant Irvin did testify that he did not intend for the money collected in excess of any 10% interest to be usury.

"(5) All other money than the $3,000 mentioned in the finding above delivered to Mrs. Chagas by Mr. Irvin as loans was money that he obtained on his own credit by borrowing it either at Continental National Bank or at North Fort Worth State Bank.

"(6) Defendant Irvin did have good credit with each of the above named banks in the City of Fort Worth sufficient to borrow the amounts of money borrowed for and delivered to Mrs. Chagas by Irvin without giving security for such loans.

"(7) Mrs. Chagas did not have credit to borrow the amounts involved or any substantial amount from either of such banks.

"(8) Defendant Irvin loaned and permitted his credit to be used while the obtaining of monies for Mrs. Chagas and would have had to repay the loans to such banks if Mrs. Chagas had not repaid the same.

"(9) The items mentioned in Paragraphs 4 and 5 of plaintiff's last filed petition were barred by the four year statute of limitation.

"(10) During the years that plaintiff was borrowing money from defendant Irvin and on his credit defendant Irvin had a close business and personal relationship with Mrs. Chagas, consulted and advised with her in a business way and performed services for her and took trips for and with her both with reference to Bull-Shoals property and claims in Arkansas and elsewhere.

"(11) The services rendered by Irvin in advising with Mrs. Chagas and in connection with his business relation to Mrs. Chagas during these years concerning such Arkansas properties and her business and property affairs elsewhere were of a substantial value to Mrs. Chagas.

"(12) Defendant Irvin testified and the Court does find that Irvin intended and was entitled to charge for the use of his credit as well as for the services and advice given to Mrs. Chagas in connection with her property and business affairs.

"(13) Mrs. Chagas did agree to compensate Irvin for his business advice and services with reference to her business and property affairs.

"(14) Mr. Irvin did intend for money collected over and above 10% interest to be for payment of the use of his credit and for his advice and services.

"(15) Mrs. Chagas never had any intention to claim usury prior to a conversation with Mr. Irvin at the Hotel Texas when he refused to comply with her wishes concerning some other new proposed loan shortly before the bringing of this suit.

"(16) The Court does find that the value of the use of Irvin's credit and his services in obtaining money and loans for Mrs. Chagas from the two banks and the value of his services and advice to Mrs. Chagas in her business affairs concerning her Ar-

kansas property and her other business matters equaled to or exceeded the money paid in excess of 10% per annum by Mrs. Chagas on her loans.

"(17) The Court finds that Mrs. Chagas had no intention at the time she paid the loans and charges for the amounts in excess of 10% per annum to be regarded as usury.

"(18) The Court finds that defendant Irvin had no intention at the time he collected the monies on the various occasions which was in excess of 10% per annum on the money loaned to be usury.

### "CONCLUSIONS OF LAW

"(1) No usury is found by the Court for which plaintiff is entitled to recover.

"(2) Plaintiff did not meet her burden of proof to show that both plaintiff and defendant intended any charge over and above 10% interest per annum on any loan or borrowed money to be usury.

"(3) Defendant Irvin was entitled to charge for the use of his credit and services in obtaining money from the North Fort Worth State Bank and Continental National Bank for Mrs. Chagas.

"(4) The defendant was entitled under the law to charge for his advice and services to and for Mrs. Chagas in connection with her Arkansas property and her other business matters.

"These findings and conclusions MADE, SIGNED and FILED this the 3rd day of February, 1970."

"It is the established law in this state that where a case has been tried without a jury and there was ample evidence in the record to support the findings of the trial court, such findings have the same force and effect as a verdict of the jury on the facts found, and a reviewing court must affirm the trial court's judgment in the absence of other substantial error. O'Connell v. Johnson, Tex.Civ.App., 122 S.W.2d 649, error refused; New Amsterdam Casualty Co. v. First National Bank, Tex. Civ.App., 134 S.W.2d 470; Guerrero v. United States F. & G. Co., Tex.Civ.App., 101 S.W.2d 592; 3 Tex.Jur. pp. 1104, 1125, 1143." Carpenters and Joiners Union, etc. v. Ritter's Cafe, 149 S.W.2d 694 (Galveston, Tex.Civ.App., 1941, ref.). To the same effect see Dixie Distributors v. Lane, 211 S.W.2d 581 (Galveston, Tex.Civ.App., 1948, ref., n. r. e.). See also 58 Tex.Jur. 2d 168, § 76, under the heading, "—Sufficiency; Degree of Proof."

In my opinion there is ample evidence in the record to support the findings of the trial court and its judgment based thereon.

"The question of usury is generally one of fact. * * * the question as to whether it was intended to evade the usury laws is usually one for the jury. This is so if there is doubt as to whether a given transaction is a cover for usury, or a fair one authorized by law, or where the evidence is controverted. Thus, whether an item was for interest or a service charge, and whether the lender received money paid for negotiating the loan, have been held to be questions of fact. * * * the question whether there was a bona fide dispute as to the existence of usury, have also been held to be questions of fact to be determined by the jury." 58 Tex.Jur.2d 169, § 77, "Trial—Questions of law and fact."

"The principles governing the construction of contracts generally, giving controlling effect to the intention of the parties, are applicable in a determination as to whether the contract involves usury. And in accord with the settled doctrine, in determining whether a contract is usurious, its terms, if fairly susceptible of it, must be given a construction that will uphold it. In other words, if the transaction or language is such as to render the intention of the parties doubtful, that construction which would attribute to them a lawful intention will be adopted." 58 Tex.Jur.2d 68, § 6, "Construction of contracts involving usury."

"To constitute usury there must exist an intent, concurred in by the borrower as well as the lender, that the lender is to exact more for the use, forbearance, or detention of money than the maximum allowed by law. * * * But where the contract, on its face, is for lawful interest only, then it must be proved that there was some corrupt agreement, device, or shift to cover usury, and that it was in full contemplation of the parties." 58 Tex.Jur.2d 83, § 15, "In general." See also pages 106, 107, § 31, under hearing, "In general."

In the case at bar the court found that none of the notes were usurious on their face. The evidence supports this finding.

See also 58 Tex.Jur.2d 163, § 73, "Evidence—presumption and burden of proof."

The record does not reflect that the appellant met the burden of proof imposed upon her by the authorities.

The court's finding to this effect was proper under the record.

"As is true in order to constitute usury, however, there must be a contract to pay usurious interest to authorize the action to recover the penalty. The penalty statute applies to verbal as well as to written contracts. It is also essential that at the time of the execution of the contract there was an intent on the part of the lender to take or charge interest at a higher rate than allowed by law." 58 Tex.Jur. 2d 142, 143, § 56, "In general."

See also p. 156, § 70, of same text captioned, "Pleading and proof."

It is undisputed that the appellee performed services for the appellant over a period of approximately four (4) years before payment to him of the alleged usurious interest. These services involved assisting Mrs. Chagas in recovering Arkansas property which she later sold for $900,000.00. Appellee was not reimbursed for the services other than by the amounts of money now asserted to be usurious by Mrs. Chagas. Irvin also performed services for her in connection with reducing an outstanding lien from $25,000.00 to $7,500.-00 and in securing cancellation of a deed to one, Wise, on the Arkansas project. There were other services rendered in connection with property on Loop 820 where foreclosure was forestalled and in connection with Ellis County property in which the appellee, because of his participation, was named as a party to a lawsuit. These and numerous other services involved consultation, travel, correspondence, conferences, and other time-consuming efforts. It appears clear from the evidence that the parties intended the excess money as payment for services. Otherwise, the appellee would be unrewarded for the considerable services rendered by him.

It is apparent from this record that both parties are intelligent and sophisticated persons and that each of them has had considerable experience in the business world and in contacts with lending agencies.

It appears that Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709 (1942) is the authority which was primarily relied upon in the original opinion reversing the trial court.

Yet in Greever, at p. 712, the court said: "Admittedly, a lender may, without violating the usury law, make an extra charge for any distinctly separate and additional consideration other than the simple lending of the money (42 Tex.Jur. 932; Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, 109 A.L.R. 1464); and where there is any dispute in the evidence as to whether there was any other separate and additional consideration, a question of fact is raised for the jury."

In the Greever case it was admitted that Greever did not render any service whatever to the borrower other than to procure and lend the money.

It was also said in Greever, at p. 712, that: "It seems to be very well settled in this State that in order to authorize the re-

covery of the penalty provided for under our statutes for the collection of usurious interest, there must have been a contract to pay the usurious interest so collected. Voluntary acceptance of interest in excess of the lawful rate is not sufficient. (Cites authorities.)"

On the basis of the findings made by the trial court all of which are fully supported by the evidence and in view of the authorities above cited I would grant the appellee's motion for rehearing and affirm the judgment of the trial court.