HOME SAVINGS ASSOCIATION OF DALLAS COUNTY, Appellant,

v.

James D. CROW et al., Appellees.

No. 18338.

Court of Civil Appeals of Texas, Dallas.

Sept. 5, 1974.

Rehearing Denied Oct. 3, 1974.

---

**162**

Robin P. Hartman, Donald C. Templin, Haynes & Boone, Dallas, for appellant.

Erich F. Klein, Jr., H. Dawson French, Lyne, Klein, French & Womble, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

James D. Crow (hereinafter referred to as "Crow"), K. C. Corporation (hereinafter referred to as "K. C."), and Buckner Plaza, Ltd. (hereinafter referred to as "Buckner") brought this action against Home Savings Association of Dallas County (hereinafter referred to as "Home"), alleging a violation of the Texas Usury Law[1] and seeking recovery of the statutory penalties of forfeiture of loan principal, double interest, and attorney's fees. Plaintiffs alleged that defendant Home had loaned them the sum of $150,000 for a period of less than thirty days and had required plaintiffs to pay interest on such loan in the sum of $24,985 with knowledge that such would constitute usury and would therefore violate the provisions of article 5069–1.01—5069–1.06. Plaintiffs also alleged that in an effort to conceal its illegal, void, and usurious contract the defend-

---

1. Article 5069–1.01—5069–1.06, Vernon's Ann. Texas Revised Civil Statutes. Unless otherwise indicated statutory references throughout this opinion are to Vernon's Annotated Civil Statutes of Texas.

ant engaged in a "complicated subterfuge" whereby the defendant attempted to make it appear that plaintiffs were actually borrowing the money from the First National Bank in Dallas while in truth and in fact the money was actually being borrowed by plaintiffs from defendant Home. Home answered plaintiffs' contention by alleging that the $24,985 which it received from plaintiffs represented fee for services rendered in connection with the closing of the loan, such services including inter alia, the providing of Home's guaranty to the First National Bank for the $150,000 loan to Crow. Home also contended that its only connection with the loan was that it was the secured guarantor and was not a lender so that it was not properly subject to a usury claim.

Following trial, and based upon a jury verdict, the trial court rendered judgment against Home and in favor of Crow, K. C., and Buckner, in the amount of $150,000 principal, $49,970 representing double interest, and $30,000 in attorney's fees. We reverse this judgment.

Our primary question is whether the evidence and verdict establish that the payment of $24,985 was usurious interest on a loan of $150,000 from Home to Crow.

To some extent the facts are uncontroverted. In 1970 Crow desired to build some luxury apartments in Dallas on property owned by him and to be known as Buckner Plaza, Ltd. Crow applied for a loan with Modern American Mortgage Corporation ("Modern American") in the sum of $2,500,000 on May 15, 1970. On August 30, 1971 the Federal Housing Administration ("FHA") issued a firm commitment to insure the mortgage loan to be made by Modern American on this building project. Crow desired to use his own construction company, K. C., to build the project but due to the fact that such company had never before undertaken a construction project the FHA required, as a condition to its insuring the mortgage, that Crow provide Modern American a one hundred

percent performance bond or a ten percent completion assurance agreement supported by a cash escrow or an irrevocable letter of credit. Crow submitted to Modern American a letter of credit which he had obtained from International Underwriters and Investment Corporation. Modern American refused to accept this instrument. Crow began to explore the possibilities of obtaining a letter of credit from another insurer. He also investigated the possibility of replacing Modern American with another mortgage company which would be willing to accept the letter of credit from International Underwriters. He was unable to accomplish either objective. In October 1971 Crow contacted Home and sought assistance in securing the closing and funding of the construction loan of the project or to find a substitute lender for the FHA loan. Home indicated an interest in assisting Crow and on October 20, 1971 Crow wrote Jim Terry, as president of Home the following letter:

Dear Mr. Terry:

In reference to the above mentioned project, we would like to solicit your services in helping to arrange for the initial closing and funding on this project. If you are successful in helping us carry this project to the initial closing, we will pay your company a fee of $24,985.00. Along with this letter, I will be furnishing you a copy of all the documents pertaining to the above mentioned project, and ask that you proceed as fast as possible in getting all the final arrangements made.

Very truly yours,

THE CROW COMPANIES
James D. Crow

Thereafter Home contacted several financial institutions regarding the possibility of the issuance of letters of credit to Crow. These institutions indicated they would be willing to issue these letters of credit provided Crow could furnish them with adequate collateral. Crow's inability

to provide the required security forced an abandonment of these attempts to obtain new letters of credit and necessitated resort to the alternate course of obtaining a payment and performance bond for K. C. Negotiations with an agent for the bond underwriters resulted in an agreement whereby a payment and performance bond would be issued on the condition that K. C. would increase its capitalization by $150,000. Crow attempted to borrow the $150,000 from the First National Bank in Dallas but such bank refused to make this loan. Crow then contacted Home to ascertain if Home would loan the $150,000 required. Home was prohibited by Federal Savings and Loan regulations from making a loan of this kind. At this point the testimony becomes somewhat conflicting. Crow introduced testimony to the effect that Home agreed to make the loan but it would require several days to make the arrangements. He said that later he was advised by Home that the loan would be made and that he should "quit worrying about it." Home introduced testimony to the effect that it agreed to act as guarantor of the loan of $150,000 to be made by First National Bank to Crow. Home also submitted testimony that it would place a $150,000 certificate of deposit with the First National Bank as collateral to secure the loan to Crow. It is undisputed that on October 27, 1971 Crow went to the First National Bank in Dallas and there affixed his signature to a note payable to the First National Bank in the sum of $150,000. At that time the signature of Jim Terry, as president of Home, was on the note as co-signer. At the time of the signing of the note and other papers in the bank no one connected with Home was present. The proceeds of the loan were deposited by the First National Bank to the credit of K. C. with the requirement that these funds could not be withdrawn except on joint signature of Crow and Home. Based on this deposit the payment and performance bond was obtained, and on November 3, 1971 the construction loan on the project in the amount of $2,498,500 was closed by

Modern American. At the same time there was disbursed from this amount to Home the sum of $24,985. On the same day Crow used the proceeds derived from the loan to discharge his $150,000 debt to the bank together with interest thereon in the sum of $233.33.

With reference to the actual transaction surrounding the obtaining of the $150,000 loan on August 27, 1971 Crow testified that he thought that the loan was being made to him by Home. He said that he had been told by a representative of Home to go down to the First National Bank and sign some papers. He said that he went to the bank and did sign the papers but his testimony indicated that he did not read them.

In answer to special issue number one the jury found that "the transaction of October 27, 1971, with the First National Bank, was a device for accomplishing a loan from defendant Home Savings Association of Dallas." In answer to special issue number two the jury found that Home Savings Association of Dallas was paid $24,985 as compensation for the use or detention of $150,000 and not as a fee for services.

In its first four points of error appellant Home contends that the trial court erred in failing to sustain its motion for instructed verdict and in submitting the issues to the jury because the undisputed evidence demonstrates that Home was merely a guarantor of the loan from First National Bank to Crow and therefore the transaction did not fall within the prohibition of the usury statutes of Texas. Home also argues that there was no evidence of probative force to support the jury's answer to special issue number two in which the jury found that Home received the amount of money as interest and not for services rendered. We sustain these points.

Any cause of action claimed by appellees must be based upon the usury laws of the state of Texas. The Texas Constitution authorizing the legislature to regulate lend-

ers and to establish maximum rates of interest states:

> The Legislature shall have authority to classify loans and lenders, license and regulate lenders, define interest and fix maximum rates of interest . . . . Tex.Const. art. XVI, § 11, Vernon's Ann.

Article 5069–1.01(a) enacted by the legislature in 1967, defines interest as "the compensation allowed by law for the use or for bearance or detention of money . . . ." Article 5069–1.06 (1971) provides in part:

> (1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error.

> (2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further that any such person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder.

■ The usury statutes of Texas are penal in nature and therefore, under the established law of this state, we are required to construe such laws strictly. As said by the supreme court in Walker v. Temple Trust Co., 124 Tex. 575, 578, 80 S.W.2d 935, 936 (1935), in dealing with an alleged usurious contract, when the contract by its terms, construed as a whole, is doubtful, or even susceptible of more than one reasonable construction, the court will adopt the construction which comports with legality. To the same effect see Commerce Trust Co. v. Best, 124 Tex. 583, 591, 80 S.W.2d 942, 946–947 (1935); and Stacks v. East Dallas Clinic, 409 S.W.2d 842, 844–845 (Tex.1966).

Our supreme court has announced a firm policy in examining loan transactions which are claimed to be usurious. Thus in Temple Trust Co. v. Sewell, 133 Tex. 417, 425, 126 S.W.2d 943, 947 (1939), it was stated:

> The courts will diligently look through the form of a transaction to discover illegal interest and protect the borrower from its consequences, but they will not be diligent to treat a carefully-planned disguise as other than what on its face it purports to be, and was intended to be, merely to save the lender from his usurious act.

■ Thus it is established that substance prevails over form in these loan transactions which are asserted to be usurious. Schmid v. City Nat'l Bank, 132 Tex. 115, 117, 114 S.W.2d 854, 855 (1938) and Stacks v. East Dallas Clinic, 409 S.W. 2d 842, 845 (Tex.1966).

■■ Charges paid by a borrower to a broker as compensation for procuring a loan are not properly to be considered as interest in determining whether the loan is usurious. Donoghue v. State, 211 S.W.2d 623, 624 (Tex.Civ.App.—Austin 1948, writ ref'd n. r. e.). For such compensation to be valid and not usurious it must appear that the loan was ultimately made with or passed on to a third party. Thus a commission is compensation for negotiating the loan and not for lending the broker's own money. Greever v. Persky, 140 Tex. 64, 67, 165 S.W.2d 709, 711 (1942). In *Greever* the supreme court said that one may lawfully sell his credit by guaranteeing a loan, and the compensation for this service

is not properly chargeable as "interest" in determining whether a loan is usurious. The court limited this by saying:

> [I]n order for such a transaction to be legal, the sale of the credit must be made for the purpose of enabling the borrower to obtain the money from a third party, or the transaction must be something other than a mere loan of money.

The clear rationale of the court in holding that procurement and guaranty fees are not to be considered interest for the purpose of the Texas usury laws is that such amounts do not fall within the coverage of the proscribed conduct under the Texas law. Of course, a lender cannot collect these fees to circumvent the statute, but a bona fide broker or guarantor can do so without being subjected to the penalty of the usury statute.

When we apply these well-established rules of law to the record in this case we are convinced that appellees have failed to meet the burden imposed upon them to prove the applicability of the statute relied upon. Where it is claimed that the form of the transaction is merely a subterfuge to cover a truly usurious arrangement the burden of proof is cast upon the plaintiff to clearly establish such subterfuge. This burden necessarily follows the strict construction to be placed upon the application of the statute which is penal in nature. The evidence produced by appellees in support of their case must be clear and convincing that the transaction, valid on its face, is a mere subterfuge to conceal the charging of usurious interest by Home. A. B. Lewis Co. v. National Investment Corp., 421 S.W.2d 723, 729 (Tex. Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.). Although this record presents a clear picture of what actually happened, it does not clearly establish a subterfuge. Crow, and his subsidiary companies, desired to enter into a large loan transaction in order to build some luxury apartments in Dallas. The basic loan, in excess of $2,000,000 was arranged with

Modern American but before being closed it became necessary for Crow to obtain temporary additional capitalization for K. C. in the sum of $150,000. Crow looked for financial assistance in several different places. He wrote a letter to Home soliciting Home's services in helping to arrange the initial closing and funding on the project. He said in this letter that if Home was successful in "helping us carry this project to the initial closing" that he would pay Home a "fee" of $24,985 which amounted to one percent of the basic loan. In response to Crow's appeal for assistance Home did just what Crow wanted it to do. After making several contacts, and being unable to lend the money itself due to savings and loan regulations, Home arranged for a guaranty of a loan from First National Bank in Dallas to Crow. Even Crow admitted that if he had offered Home the fee of $24,985 in order to procure and guarantee a loan of $150,000 from First National Bank he would not have a valid claim under the Texas usury law. However, he urges that because he did not understand who was making the loan and was not properly notified of the lender's identity, the $24,985 fee is usurious interest received by Home. We cannot agree with Crow.

It is undisputed that the promissory note executed by Crow evidencing the $150,000 indebtedness was made payable to the order of the bank and was co-signed by Home as surety. It is undisputed that the repayment of this loan to the bank was secured by Home's placing with the bank as collateral a certificate of deposit in the sum of $150,000. The loan proceeds were deposited in the account of K. C. and came from the bank and not from Home. The interest on this money was paid by Crow directly to the bank. The $24,985 fee was paid by Crow to Home from the proceeds of the $2,498,500 loan received from Modern American. Thus it is apparent to us that the transaction in question was both in form and in substance a loan by the bank to Crow, the repayment of which was

guaranteed by Home. The money actually loaned was not money owned by Home and was not received by Crow from Home. Since the fee charged by Home to Crow for its services in connection with the ultimate making of the loan by First National Bank was legitimate within the authorities cited the same does not constitute usury within the meaning of the statutes.

We cannot agree with Crow's contention that since he did not read the promissory note at the time he went to the First National Bank he is not charged with knowledge of the fact that First National Bank was the lender. He admitted that the papers, including the promissory note, were presented to him and that he had every opportunity to read them before signing. He does not charge anyone with duress or fraud in connection with the signing of the note at the bank's office. No one connected with Home was present at the time. The law is well settled that where no fraud is involved, if one legally competent to contract voluntarily signs an agreement without knowledge of its contents he is conclusively presumed to have consented to its terms and is charged with knowledge of its legal effect. Barfield v. Howard M. Smith Co., 426 S.W.2d 834, 838 (Tex.1968); Estes v. Republic Nat'l Bank, 462 S.W.2d 273, 276 (Tex.1970); and Lamb v. Ed Maher, Inc., 368 S.W.2d 255, 259 (Tex.Civ.App.—Dallas 1963, no writ).

We hold that the record in this case demonstrates, as a matter of law, that the transaction was completely legal and not violative of the Texas usury statutes and that the trial court erred in refusing to grant an instructed verdict to appellant and in rendering judgment for usury penalties.

We also sustain appellant's contention that the trial court erred in rendering judgment against it based upon the jury's answer to special issue number one. In Crow's pleadings he alleges that Home loaned him the $150,000 by a "complicated subterfuge." The trial court, in submitting special issue number one, asked the jury to find from a preponderance of the evidence whether the transaction of October 27, 1971 with the First National Bank was a "device" for accomplishing a loan from Home. This issue is defective on its face. It is elementary that when the trial court submits a case upon special issues it must submit the controlling issues made by the written pleadings and the evidence. Texas Rules of Civil Procedure 279. In order to uphold the issue used in this case as submitting a controlling issue to the jury it is to assume that the word "device" has the same meaning as "subterfuge" as pleaded by Crow. We do not believe that these words have the same general meaning. Webster's New International Dictionary (2d ed. 1941) defines "subterfuge" as "a device, plan, or the like . . . escape or concealment . . . to escape censure . . . to justify opinions or conduct; an evasion." Webster also defines "device" as:

> That which is devised, or formed by design; a contrivance; an invention; project, scheme; often, a scheme to deceive; a stratagem; an artifice.

Thus it is evident that while all subterfuges may be devices all devices are not subterfuges. While "subterfuge" may denote a concealed effort or evasion "device" does not necessarily so indicate. The controlling issue in this case was whether Home used a "subterfuge" to conceal a loan to Crow, and not whether Home used any means, which could arguably include a guaranty, to arrange for Crow's loan from the bank.

On the other hand if we assume that this issue does submit the issue of "subterfuge," then the evidence does not support the affirmative answer for the reasons already stated.

Neither do we find any evidence of probative force to support the answer of the jury to special issue number two in which it was found that Home was paid $24,985 "as compensation for the use or detention of $150,000 and not for services." The record reveals, as a matter of law, that Home did nothing more than pledge its credit to the First National Bank

**168**

in order to enable Crow to obtain a loan from the First National Bank. This is a bona fide transaction and does not fall within the provisions of the usury statutes. Lafferty v. A. E. M. Developers and Builders Co., 483 S.W.2d 279 (Tex.Civ. App.—San Antonio 1972, writ ref'd n. r. e.); Chagas v. Irvin, 458 S.W.2d 840 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.); Sapphire Homes, Inc. v. Gilbert, 426 S.W.2d 278 (Tex.Civ.App.— Dallas 1968, writ ref'd n. r. e.); Pearce & Williams, Punitive Past to Current Convenience—A Study of the Texas Law of Usury, 22 S.W.L.J. 233, 239 (1968).

In view of our holding above, we find it unnecessary to pass upon the remaining points contained in appellant's brief.

The judgment of the court is reversed and here rendered that James D. Crow, K. C. Corporation, and Buckner Plaza, Ltd. do have and recover nothing of and from Home Savings Association of Dallas County.

Reversed and rendered.